107 A.3d 1

In the Interest of J.B., a Minor.

Appeal of Commonwealth of Pennsylvania.

In the Interest of D.L., Jr., a minor.

Appeal of Commonwealth of Pennsylvania.

In the Interest of D.E., a minor.

Appeal of Commonwealth of Pennsylvania.

In the Interest of K.O.H., a minor.

Appeal of Commonwealth of Pennsylvania.

In the Interest of A.E.M., a minor.

Appeal of Commonwealth of Pennsylvania.

In the Interest of J.A.T., a minor.

Appeal of Commonwealth of Pennsylvania.

In the Interest of D.G.T., a Minor.

Appeal of Commonwealth of Pennsylvania.

Supreme Court of Pennsylvania.

Argued May 6, 2014.

Decided Dec. 29, 2014.

Caleb Curtis Enerson, Esq., Thomas L. Kearney III, Esq., James Edward Zamkotowicz, York County District Attorney's Office, for Commonwealth of Pennsylvania.

Bruce Piersoll Blocher, Esq., Catherine Elizabeth Feeley, Esq., Marsha Levick, Esq., Riya Saha Shah, Esq., Juvenile Law Center, Abigail Esther Horn, Esq., Aaron Joshua Marcus, Esq., Defender Association of Philadelphia, Anthony J. Tambourino, Esq., York County Public Defender's Office, for J.B., D.E., A.E.M. and D.G.T.

Bruce Piersoll Blocher, Esq., Catherine Elizabeth Feeley, Esq., Marsha Levick, Esq., Riya Saha Shah, Esq., Juvenile Law Center, Abigail Esther Horn, Esq., Aaron Joshua Marcus, Esq., Defender Association of Philadelphia, Thomas Korey Leslie, Esq., Korey Leslie, L.L.C., Anthony J. Tambourino, Esq., York County Public Defender's Office, for D.L.

Bruce Piersoll Blocher, Esq., Catherine Elizabeth Feeley, Esq., Marsha Levick, Esq., Riya Saha Shah, Esq., Juvenile Law Center, Abigail Esther Horn, Esq., Aaron Joshua Marcus, Esq., Defender Association of Philadelphia, Traci Leigh McPate, Esq., Griest, Himes, Herrold, Schaumann, Reynosa, L.L.P., Anthony J. Tambourino, Esq., York County Public Defender's Office, for K.O.H.

Kurt A. Blake, Esq., Blake & Gross, L.L.C., Bruce Piersoll Blocher, Esq., Catherine Elizabeth Feeley, Esq., Marsha Levick, Esq., Riya Saha Shah, Esq., Juvenile Law Center, Abigail Esther Horn, Esq., Aaron Joshua Marcus, Esq., Defender Association of Philadelphia, Anthony J. Tambourino, Esq., York County Public Defender's Office, for J.A.T.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice BAER.

In this case, we consider the constitutionality of provisions of the Sex Offender Registration and Notification Act (SOR-

NA) as applied to juveniles. 42 Pa.C.S. §§ 9799.10–9799.41. Pursuant to 42 Pa.C.S. § 722(7), we review this case directly from the order of the York County Court of Common Pleas holding the statute unconstitutional as violative of the *ex post facto* clause, protections against cruel and unusual punishment, and due process rights through the use of an irrebuttable presumption. *In the Interest of J.B. et al.,* No. CP–67–JV–726–2010 (CP York Nov. 1, 2013) ("Tr. Ct. Op.").[1] After review, we affirm the determination that SORNA violates juvenile offenders' due process rights through the use of an irrebuttable presumption.

As detailed in the trial court's decision, the seven juveniles in this case ("the Juveniles") were previously adjudicated delinquent in regard to specific sexual crimes and were subject to juvenile court supervision on SORNA's effective date.[2] Accordingly, the Juveniles became subject to lifetime registration under 42 Pa.C.S. § 9799.15(a)(4), *see infra* at 415–16, 107 A.3d at 5–6. The Juveniles filed motions for *nunc pro tunc* relief asserting SORNA's unconstitutionality, which were consolidated by the trial court, following the passage of SORNA and its attachment to them.

## I. SORNA—History and Provisions

Prior to considering the legal issues at hand, we review the history and details of Pennsylvania's SORNA. Relevantly, SORNA arose from the Federal Adam Walsh Child Protection and Safety Act of 2006, Public Law 109–248, 120 Stat. 587 (2006), which, in part, mandated that states impose registration requirements on juvenile sexual offenders or be subject to a penalty. The penalty is calculated as ten percent of grants allocated to states pursuant to the Edward Byrne Memorial

1. We additionally recognize that the Monroe County Court of Common Pleas also declared that SORNA infringes juveniles' constitutional guarantee of due process by creating an irrebuttable presumption and further held that SORNA violates Pennsylvania's constitutional right to reputation. *In the Interest of B.B. et al.,* No. CP–45–JV–248–2012 (CP Monroe Jan. 16, 2014), *appeal docketed,* Nos. 49–50, 52–55 MAP 2014.

2. The details of the underlying crimes committed by the Juveniles are described in the trial court's opinion but are not relevant to the legal questions before this Court.

Justice Assistance Grant Programs, 42 U.S.C. §§ 3750 *et seq.*, which in Pennsylvania constitutes approximately $1.6 million annually. 42 U.S.C. § 16925(a); Tr. Ct. Op. at 8 n. 1. The penalty will not be assessed, however, if the federal Attorney General determines that a state has "substantially implement[ed]" the program or that the state has a "demonstrated inability to implement certain provisions that would place the jurisdiction in violation of its constitution, as determined by a ruling of the jurisdiction's highest court." 42 U.S.C. § 16925(b)(1). If the state cannot adopt the provisions under its constitution, "the Attorney General may determine that the jurisdiction is in compliance with this chapter if the jurisdiction has made, or is in the process of implementing reasonable alternative procedures or accommodations, which are consistent with the purposes of this chapter." *Id.* § 16925(b)(3).

The Pennsylvania General Assembly passed SORNA as Act 111 of 2011, signed December 20, 2011.[3] In so doing, it provided for the expiration of prior registration requirements, commonly referred to as Megan's Law, 42 Pa.C.S. §§ 9791–9799.9, as of December 20, 2012, and for the effectiveness of SORNA on the same date. The General Assembly set forth its purposes in adopting SORNA, which included bringing Pennsylvania into substantial compliance with the Adam Walsh Act and providing a mechanism for the general public and law enforcement to obtain information concerning sexual offenders. *Id.* § 9799.10. SORNA also includes legislative findings and a declaration of policy instructing that "[t]he Adam Walsh Child Protection and Safety Act of 2006 provides a mechanism for the Commonwealth to increase its regulation of sexual offenders in a manner which is nonpunitive but offers an increased measure of protection to the citizens of this Commonwealth." *Id.* § 9799.11(a)(2); *see also Id.* § 9799.11(b)(1). The legislature made additional findings that the release of information, especially through electronic means, allows the community to prepare and protect them-

3. SORNA has been amended as recently as September 2014. The most recent amendments do not affect the issues before this Court. Accordingly, this opinion will utilize the current statutory language.

selves from recidivist acts by sexual offenders. *Id.* § 9799.11(a)(3), (7), (8), (b)(2). It reiterated that release of the information regarding sexual offenders subject to registration was "a means of assuring public protection and shall not be construed as punitive." *Id.* § 9799.11(b)(2).

Of substantial importance to the constitutional issues raised before this Court, SORNA includes specific legislative findings regarding sexual offenders, which Section 9799.12 defines as including all individuals required to register under SORNA:

(4) Sexual offenders pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest. *Id.* § 9799.11(a)(4).[4] The legislature also stated that registration would "further the governmental interests of public safety and public scrutiny of the criminal and mental health systems so long as the information released is rationally related to the furtherance of those goals." *Id.* § 9799.11(a)(6).

In regard to juveniles, SORNA's requirements are applicable only to "juvenile offenders," a term which is statutorily limited to those who are fourteen or older when they commit "an offense which, if committed by an adult, would be classified as an offense under 18 Pa.C.S. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse) or 3125 (relating to aggravated indecent assault)" or an attempt, solicitation or conspiracy offense related thereto, and are adjudicated delinquent of the offense on or after the effective date of the statute. 42 Pa.C.S. § 9799.12 ("Juvenile offender")(1).[5] Additionally, as relevant to the Juveniles before this

---

4. In contrast, the prior version of Megan's Law restricted its findings regarding recidivism to those determined to be sexually violent predators:

(2) These sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments and that protection of the public from this type of offender is a paramount governmental interest.

*Id.* § 9791 (expired). A sexually violent predator was defined to require an assessment of the individual as suffering from a "mental abnormality or personality disorder" that makes them "likely to engage in predatory sexually violent offenses." *Id.* § 9792 (expired).

5. In full, Section 9799.12's definition of juvenile offender provides:

Court, SORNA's registration requirements also apply to individuals who were adjudicated delinquent prior to the effective date but are "subject to the jurisdiction of the court on the basis of that adjudication of delinquency." *Id.* §§ 9799.12 ("Juvenile offender")(1)(ii), 9799.13(8)(8.2).[6] The term also

"Juvenile offender." One of the following:

(1) An individual who was 14 years of age or older at the time the individual committed an offense which, if committed by an adult, would be classified as an offense under 18 Pa.C.S. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse) or 3125 (relating to aggravated indecent assault) or an attempt, solicitation or conspiracy to commit an offense under 18 Pa.C.S. § 3121, 3123 or 3125 and either:

(i) is adjudicated delinquent for such offense on or after the effective date of this section; or

(ii) has been adjudicated delinquent for such offense and on the effective date of this section is subject to the jurisdiction of the court on the basis of that adjudication of delinquency, including commitment to an institution or facility set forth in section 6352(a)(3) (relating to a disposition of delinquent child).

(2) An individual who, on or after the effective date of this paragraph, was 14 years of age or older at the time the individual committed an offense similar to an offense under 18 Pa.C.S. § 3121, 3123 or 3125 or an attempt, solicitation or conspiracy to commit an offense similar to an offense under 18 Pa.C.S. § 3121, 3123 or 3125 under the laws of the United States, another jurisdiction or a foreign country and was adjudicated delinquent for such an offense; or who was previously adjudicated delinquent for such an offense and, on the effective date of this paragraph, is subject to the jurisdiction of the court on the basis of that adjudication of delinquency.

(3) An individual who, on or after the effective date of this paragraph, was required to register in a sexual offender registry in another jurisdiction or foreign country based upon an adjudication of delinquency.

The term does not include a sexually violent delinquent child.

*Id.* § 9799.12.

6. Section 9799.13 ("Applicability") provides for registration in regard to juvenile offenders as follows:

(8) An individual who, on or after the effective date of this section, is a juvenile offender who was adjudicated delinquent within this Commonwealth or was adjudicated delinquent in another jurisdiction or a foreign country and:

(i) has a residence within this Commonwealth;

(ii) is employed within this Commonwealth; or

(iii) is a student within this Commonwealth.

(8.1) An individual who is a juvenile offender who is adjudicated delinquent in this Commonwealth on or after the effective date of this paragraph but who does not have a residence within this Commonwealth, is not a transient, is not employed in this Commonwealth or

applies to individuals who on or after the effective date of the act were required to register as a sexual offender in another jurisdiction based upon a delinquency adjudication. *Id.* § 9799.12("Juvenile offender")(3).

For adult sexual offenders, SORNA classifies sexual offenses into three tiers, with different levels of registration requirements. While Tiers I and II contain numerous sexual offenses, more than a dozen of the most serious sexual offenses are reserved for Tier III. *Id.* § 9799.14. Tier I offenses require registration for fifteen years, and Tier II mandates twenty-five years of reporting. *Id.* § 9799.15(a). Lifetime registration is reserved for those convicted of a Tier III sexual offense, those determined to be sexual violent predators under 42 Pa.C.S. § 9799.24, sexually violent delinquent children,[7] and as relevant to the case at bar, the following juvenile offenders:

> is not a student within this Commonwealth must register with the Pennsylvania State Police in accordance with section 9799.19 prior to leaving this Commonwealth.
> (8.2) An individual who between January 23, 2005, and December 19, 2012, established a residence or was a transient in this Commonwealth, was employed within this Commonwealth, or was a student in this Commonwealth, and who was required to register in a sexual offender registry as a result of an adjudication of delinquency for an offense which occurred in a foreign country or another jurisdiction and that required the individual to register in that foreign country or other jurisdiction.
> *Id.* § 9799.13.
> Section 9799.13(9) also specifically provides for the applicability of SORNA to the distinct category of "sexually violent delinquent child," which is defined for purposes of court-ordered involuntary treatment as follows:
> A person who has been found delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest) and who has been determined to be in need of commitment for involuntary treatment under this chapter.
> *Id.* § 6402.

7. As referenced above in note 5, "sexually violent delinquent children" are a distinct group of juveniles who have committed one of six listed sexual crimes and have been deemed in need of commitment for involuntary treatment. *See* 42 Pa.C.S. §§ 9799.12, 6402. In contrast, the term "juvenile offender" covers juveniles who have been adjudicated delinquent of rape, involuntary deviate sexual intercourse, aggravat-

(4) A juvenile offender who was adjudicated delinquent in this Commonwealth, or who was adjudicated delinquent in another jurisdiction or foreign country as a consequence of having committed an offense similar to an offense which would require the individual to register if the offense was committed in this Commonwealth, shall register for the life of the individual.

*Id.* § 9799.15(a)(4).

Juvenile offenders and others subject to Tier III registration must appear in person at an approved registration site quarterly to verify specified personal information and have a photograph taken. *Id.* § 9799.15(e), (h)(2). In contrast, those individuals subject to Tier I registration appear only annually and Tier II offenders appear semiannually. *Id.* § 9799.15(e). Further, juvenile offenders and others subject to registration must appear in person at an approved registration site within three business days of any one of nine specified occurrences, including a change in residence, employment, enrollment as a student, telephone number, or email address.[8] SORNA also

ed indecent assault or the related inchoate crimes, for conduct that occurred after the juvenile turned fourteen, without a determination of need of commitment for involuntary treatment.

8. SORNA specifically provides:

(g) In-person appearance to update information.—In addition to the periodic in-person appearance required in subsections (e), (f) and (h), an individual specified in section 9799.13 shall appear in person at an approved registration site within three business days to provide current information relating to:

(1) A change in name, including an alias.

(2) A commencement of residence, change in residence, termination of residence or failure to maintain a residence, thus making the individual a transient.

(3) Commencement of employment, a change in the location or entity in which the individual is employed or a termination of employment.

(4) Initial enrollment as a student, a change in enrollment as a student or termination as a student.

(5) An addition and a change in telephone number, including a cell phone number, or a termination of telephone number, including a cell phone number.

(6) An addition, a change in and termination of a motor vehicle owned or operated, including watercraft or aircraft. In order to fulfill the requirements of this paragraph, the individual must provide any license plate numbers and registration numbers and other identi-

mandates specific registration twenty-one days prior to any international travel. *Id.* § 9799.15(i). If an individual fails to comply with the registration requirements the offender "may be subject to prosecution under 18 Pa.C.S. § 4915.1 (relating to failure to comply with registration requirements)."[9]   42 Pa.C.S. § 9799.21(a).

> fiers and an addition to or change in the address of the place the vehicle is stored.
>
> (7) A commencement of temporary lodging, a change in temporary lodging or a termination of temporary lodging.   In order to fulfill the requirements of this paragraph, the individual must provide the specific length of time and the dates during which the individual will be temporarily lodged.
>
> (8) An addition, change in or termination of e-mail address, instant message address or any other designations used in Internet communications or postings.
>
> (9) An addition, change in or termination of information related to occupational and professional licensing, including type of license held and license number.
>
> *Id.* § 9799.15(g).

9.   Section 4915.1 provides in relevant part:

> (a) Offense defined.—An individual who is subject to registration under 42 Pa.C.S. § 9799.13 (relating to applicability) commits an offense if he knowingly fails to:
>
> (1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) or 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police);
>
> (2) verify his address or be photographed as required under 42 Pa.C.S. § 9799.15, 9799.19 or 9799.25;  or
>
> (3) provide accurate information when registering under 42 Pa.C.S. § 9799.15, 9799.19 or 9799.25.
>
>    *   *   *
>
> (c) Grading for sexual offenders who must register for 25 years or life.—
>
> (1) Except as set forth in paragraph (3), an individual subject to registration under 42 Pa.C.S. § 9799.13 and required to register for a period of 25 years or life who commits a violation of subsection (a)(1) or (2) commits a felony of the second degree.
>
> (2) An individual subject to registration under 42 Pa.C.S. § 9799.13 and required to register for a period of 25 years or life who commits a violation of subsection (a)(1) or (2) and who has previously been convicted of an offense under subsection (a)(1) or (2) or (a.1)(1) or (2) or a similar offense commits a felony of the first degree.
>
> (3) An individual subject to registration under 42 Pa.C.S. § 9799.13 and required to register for a period of 25 years or life who violates subsection (a)(3) commits a felony of the first degree.
>
> 18 Pa.C.S. § 4915.1.

Information gained through the registration process is included in a statewide registry maintained by the Pennsylvania State Police, which must be able to communicate with registries maintained by the Department of Justice as well as other jurisdictions. *Id.* § 9799.16(a). The State Police are obligated to make the information available to the jurisdiction where the individual resides, is employed, or is enrolled as a student and any jurisdiction where the individual has terminated residence, employment, or enrollment. *Id.* § 9799.18(a)(1)-(2). The State Police are also required to provide the information to the United States Attorney General, the Department of Justice, and the United States Marshals Service for inclusion in federal databases. *Id.* § 9799.18(a)(3). Additionally, information is provided to the relevant district attorney, the chief law enforcement officer, and the probation and parole office where the individual resides, is employed, or is enrolled as a student. *Id.* § 9799.18(a)(4)-(6).[10] Information gained through the registry is not posted by the State Police on a public Internet website, nevertheless there is no prohibition against public distribution of the information by any entity to which the State Police are required to provide the information.[11]

Designation as a juvenile offender under Pennsylvania law also triggers inclusion of the individual on the National Sexual Offender Registry. 42 U.S.C. § 16911(8), 16919. Additionally, juvenile offenders adjudicated in Pennsylvania who travel for an extended time or move to another state will be subject to registration requirements of that state, which may include public Internet websites. Moreover, once that information is included on any state's public website, it is also included on the Dru Sjodin National Sex Offender Public Website.[12] *Id.* § 16920; Tr. Ct. Op. at 14–15.

10. Other provisions, *inter alia*, address situations involving international residence and travel. *Id.* § 9799.18(c), (d).

11. Conversely, the State Police are required to post on a public Internet website specified information regarding "individuals convicted of a sexually violent offense, sexually violent predators and sexually violent delinquent children." *Id.* § 9799.28(a)(1).

12. Named for a young woman who was sexually assaulted and murdered, the Dru Sjodin National Sex Offender Public Website "allow[s]

A trial court "shall have no authority to relieve a sexual offender from the duty to register under this subchapter or to modify the requirements of this subchapter as they relate to the sexual offender," other than pursuant to Section 9799.17, which provides for termination of the registration period for juvenile offenders. 42 Pa.C.S. § 9799.23(b)(2). It states that a juvenile offender shall have the registration requirement terminated if: (1) twenty-five years have elapsed since the individual was adjudicated delinquent, excluding time spent under the supervision of the court; (2) "the individual has not been convicted of a subsequent sexually violent offense or a subsequent offense" graded as a second degree misdemeanor or higher, punishable by more than one year of imprisonment; (3) the "individual successfully completed court-ordered supervision without revocation;" and (4) the individual completed an approved treatment program for sexual offenders. *Id.* § 9799.17(a). The burden is on the petitioner to demonstrate by clear and convincing evidence that all the criteria of section (a) have been satisfied, and the trial court must additionally find "that allowing the petitioner to terminate the obligation to register is not likely to pose a threat to the safety of any other person." *Id.* § 9799.17(b)(2).

In addition to the substantial registration requirements, SORNA, like the prior iterations of Megan's Law, provides that individuals convicted (as opposed to adjudicated delinquent) of any Tier I, II, or III sexual offense shall be individually assessed by the state's Sexual Offender Assessment Board (SOAB)[13] to determine if the sexual offender should be classified as a sexually violent predator.[14] *Id.*

the public to obtain relevant information for each sex offender by a single query for any given zip code or geographical radius set by the user in a form and with such limitations as may be established by the Attorney General." 42 U.S.C. § 16920(b). In contrast, the National Sexual Offender Registry, 42 U.S.C. § 16919, is not searchable by the public but is available to law enforcement.

13. The SOAB is "composed of psychiatrists, psychologists and criminal justice experts, each of whom is an expert in the field of the behavior and treatment of sexual offenders." *Id.* § 9799.35(a).

14. We note that the category of "individual convicted of a sexually violent offense" in 42 Pa.C.S. § 9799.24(a) generally refers to adults but

§ 9799.24(a) ("a court shall order an individual convicted of a sexually violent offense to be assessed by the board"); § 9799.12 (defining "sexually violent offense"). As part of the detailed assessment, the SOAB considers "criteria reasonably related to the risk of reoffense." *Id.* § 9799.24(b)(4). Following the assessment, the court holds a hearing to determine by clear and convincing evidence if the offender is a sexually violent predator. *Id.* § 9799.24(e). If the court so concludes, the individual shall be subject to various additional restrictions including increased notification provisions under 42 Pa.C.S. § 9799.27 and mandatory counseling under Section 9799.36.

Similarly, Section 9799.24 also provides for individualized assessment of a subsection of juveniles, who have been adjudicated delinquent of specified sexual offenses, are approaching their twentieth birthday, and have been committed to an institution. These juveniles are assessed to determine whether they are in need of continued commitment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior. *Id.* § 9799.24(h); *see also Id.* § 6358 ("Assessment of delinquent children by the State Sexual Offenders Assessment Board"). This assessment is conducted under the same criteria utilized for determining if an individual is a sexually violent predator. *Id.*

will also include certain juveniles prosecuted in criminal court. Specified juveniles are automatically subject to criminal prosecution, rather than delinquency adjudication, if they were at least fifteen years old when they allegedly committed the relevant crimes of rape, involuntary deviate sexual intercourse, or aggravated indecent assault (or the related inchoate crimes) and the crime was committed with a deadly weapon or if they have previously been adjudicated delinquent of such offense, subject to transfer to juvenile court if in the public interest. *Id.* §§ 6322(a) ("Transfer from criminal proceedings"); 6302(2) (listing crimes not included in "delinquent acts"). Additionally, a juvenile who is at least fourteen years old at the time of the relevant conduct is subject to transfer from juvenile court if "there are reasonable grounds to believe that the public interest is served by the transfer of the case for criminal prosecution." *Id.* § 6355(a)(4)(iii). These provisions will exempt from the term "juvenile offender" some of the more dangerous youths, who will instead be subject to SORNA as individuals convicted of sexual violent offenses. *Id.* § 9799.13.

## II. Trial Court Decisions holding SORNA Unconstitutional

With this statutory foundation, we review the York County Court of Common Pleas' consideration of the Juveniles' claims that SORNA's juvenile offender registration requirements violate constitutional protections. The trial court considered the Juveniles' challenges under the *ex post facto* clause, the protection against cruel and unusual punishment, due process through the use of an irrebuttable presumption, and Pennsylvania's right to reputation, and deliberated whether SORNA's requirements conflicted with the Juvenile Act. Given our conclusion of unconstitutionality based upon the irrebuttable presumption doctrine, we do not speak to the trial court's ultimate determinations on the alternative issues but recognize that some of the trial court's supporting observations are nonetheless relevant to our current inquiry.

In its opinion, the court observed that SORNA contains more significant registration requirements than prior versions of Megan's Law and applies those requirements to juveniles, where previously registration requirements only applied to adults. Tr. Ct. Op. at 22–23 (distinguishing *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962, 973–75 (2003) (*"Williams II"*)).[15] In contrast to what it found to be *de minimis* legislative history regarding SORNA's imposition of registration requirements on juvenile offenders, Tr. Ct. Op. at 8, the trial court emphasized the longstanding and well-articulated purpose of Pennsylvania's juvenile justice system. The court observed that juvenile courts are structured "to provide [measures of] guidance and rehabilitation for the child and protection for society, not to [fix] criminal responsibility, guilt,

15. In conformity with the court below and our prior decisions, we will use the nomenclature of *"Williams II"* to refer to our cited 2003 decision holding that the lifetime registration, notification, and counseling provisions of the then-applicable version of Megan's Law were constitutional as applied to sexually violent predators, but deeming unconstitutional, but severable, the penalties for failure to register. *Williams II*, 832 A.2d at 986. In contrast, *Williams I* refers to this Court's decision in *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999), declaring the original version of Megan's Law unconstitutional as it pertained to sexually violent predators.

and punishment." *Id.* at 15 (quoting *Kent v. U.S.*, 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966)). The court noted the juvenile system's emphasis on "balanced and restorative justice," with the intent to allow anonymity for juvenile mistakes. *Id.* at 15–16.

The York County Court also looked to recent United States Supreme Court decisions declaring children to be constitutionally different from adults. The trial court recognized that the High Court identified three critical distinctions between children and adults, specifically juveniles' "lack of maturity" resulting in impulsivity, their vulnerability to external influences combined with their limited ability to control their environment, and the still-developing characters which make their actions less indicative of "irretrievabl[e] deprav[ity]." *Id.* at 16–17 (quoting *Miller v. Alabama*, —— U.S. ——, 132 S.Ct. 2455, 2464, 183 L.Ed.2d 407 (2012), and *Roper v. Simmons*, 543 U.S. 551, 553, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005))(alterations in original). The court then opined that SORNA failed to account for the substantial differences between juveniles and adults regarding juveniles' lessened culpability and enhanced potential for rehabilitation.

The trial court also recognized that the research included in the stipulated record in this case,[16] discussed *infra,* supported the United States Supreme Court's holdings regarding juveniles. The research studies relied upon by the trial court indicated that recidivism rates for juvenile sex offenders are far lower than the recidivism rates of adult sexual offenders and, instead, are comparable to non-sexually offending juveniles. *Id.* at 17–18. Additionally, the court considered the research addressing the effects of registration on juveniles, noting that registration leads to depression, isolation from

16. Commendably, the Commonwealth and the Juveniles entered into several stipulations regarding the facts, registration requirements, expert witnesses, and legislative history. We recognize that the Commonwealth stipulated that the Juveniles' experts would testify consistently with their research, which does not necessarily entail accepting the underlying research. Nonetheless, the Commonwealth neither provides a substantive critique of this research nor produces any contrary empirical evidence.

society, and in some cases, an increased risk of other criminal acts. *Id.* at 19. Accordingly, the court found "that the Pennsylvania SORNA requirements for retroactive registration, periodic in-person appearances, verification, and penalties for noncompliance impose a substantial burden on juvenile sex offenders," burdens which the trial court observed were imposed with minimal legislative discussion regarding juvenile registration requirements *Id.* at 19–20.

Relevant to our decision herein, the trial court found SORNA violative of the due process protections of the United States and Pennsylvania Constitutions because it imposed irrebuttable presumptions on the juvenile offenders by requiring lifetime registration for those adjudicated delinquent of certain enumerated crimes without considering the differences between juveniles and adults or the individual characteristics of each juvenile offender. Quoting this Court, the trial court recognized that "irrebuttable presumptions violate due process when 'the presumption is deemed not universally true and a reasonable alternative means of ascertaining that presumed fact [is] available.' " *Id.* at 36 (quoting *Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Clayton,* 546 Pa. 342, 684 A.2d 1060, 1063 (1996)). The court opined that while the Juveniles were afforded due process in the underlying delinquency adjudication, they were deprived of due process to the extent they desired to challenge the irrebuttable presumption that the adjudication of a specified sexual crime equates to high risk of recidivism requiring registration. *Id.* at 37. The court, therefore, concluded that SORNA unconstitutionally created an irrebuttable presumption in violation of the due process clause. Accordingly, the York County Court directed the State Police "to remove the [Juveniles'] names, photographs, and all other information from the sex offender registry." Trial Court Order at 2 (Nov. 1, 2013).[17]

17. Although the trial court did not find it rose to the level of a constitutional violation, the court additionally concluded that SORNA's registration requirements were inconsistent with the rehabilitative purposes and individualized approach of the Juvenile Act because SORNA does not provide for individualized assessment of whether the juvenile is a threat to society, whether and how best the juvenile can be

Two months after the trial court's decision in the case at bar, the Monroe County Court of Common Pleas also held SORNA unconstitutional.[18] *In the Interest of B.B. et al.*, No. CP–45–JV–248–2012 (CP Monroe Jan. 16, 2014). As in this case, juvenile offenders in Monroe County challenged the registration requirements, asserting that SORNA violated the *ex post facto* clause, violated Pennsylvania's due process protection through the use of an irrebuttable presumption, imposed a cruel and unusual punishment, and impaired the juveniles' fundamental right to reputation as protected by the Pennsylvania Constitution.[19] *Id.* at 3–4. The court addressed the juveniles' assertion that SORNA infringed upon their fundamental right to reputation under the Pennsylvania Constitution pursuant to both a substantive due process analysis and the irrebuttable presumption doctrine, finding these claims interrelated. *Id.* at 11.

Like the York County Court, the Monroe County Court concluded that SORNA unconstitutionally utilized an irrebuttable presumption. It observed that, while the adjudication of delinquency involves a hearing on the facts of the crime, no proceeding addresses the juvenile's likelihood of reoffense, upon which registration is based. *B.B.* at 32–36 (relying upon *Clayton* and *D.C. v. School District of Philadelphia*, 879 A.2d 408 (Pa.Cmwlth.2005) (holding that an unconstitutional irrebuttable presumption existed where school district automatically excluded from regular classrooms students returning

rehabilitated, and whether the juvenile over time has actually been rehabilitated.

18. The Monroe County decision is currently awaiting disposition in this Court. *See* 49, 50, 52–55 MAP 2014. Although we do not decide specifically that appeal through this opinion, we take note of the underlying trial court's decision. We further recognize a separate decision of the Monroe County Court which adopted the reasoning of *B.B.* and likewise declared SORNA unconstitutional as applied to a different juvenile. *In the Interest of R.M.J.*, No. CP–45–JV–190–2013 (CP Monroe Jan. 15, 2014). *R.M.J.* is also currently pending before this Court. *See* 9 MAP 2014.

19. The Monroe County juveniles also claimed that SORNA conflicted with the Juvenile Act's rehabilitative purpose. The court, while acknowledging the different purposes, did not find any irreconcilable differences between the laws. *Id.* at 7–10.

from juvenile delinquency placement or criminal conviction)). The court opined that the limited provision allowing for termination of registration after twenty-five years did not provide a meaningful opportunity to challenge the registration. Accordingly, the Monroe County Court declared unconstitutional the provisions of SORNA relating to juvenile offenders who are not assessed as sexually violent delinquent children, and released those juveniles from registration requirements.[20]

## III. Party Arguments

On appeal to this Court, the Commonwealth asserts a challenge as of right to the York County Court's declaration that SORNA is unconstitutional as applied to juveniles, pursuant to 42 Pa.C.S. § 722(7) (providing for the Supreme Court's exclusive jurisdiction of appeals from final orders "where the court of common pleas has held invalid as repugnant to the Constitution" any statute of this Commonwealth). For purposes of our determination, the Commonwealth argues that the York County Court improperly concluded that SORNA created an irrebuttable presumption that violates due process.[21]

The Commonwealth observes that the irrebuttable presumption doctrine under federal law is based on the right not to be deprived of life, liberty or property without due process of law.[22] It emphasizes that federal courts have concluded

20. The Monroe County Court also concluded that SORNA violated juvenile offenders' right to reputation under the Pennsylvania Constitution and substantive due process. The Monroe County Court did not consider the juveniles' additional claims that SORNA's registration requirements violated the *ex post facto* clause or the protection against cruel and unusual punishment. As we hold SORNA unconstitutional as violative of the irrebuttable presumption doctrine, we do not address these additional questions.

21. The Commonwealth additionally contests the trial court's determinations that SORNA is violative of the *ex post facto* clause and the protection against cruel and unusual punishment. As we find SORNA unconstitutional based upon its use of an irrebuttable presumption, we do not recite the Commonwealth's arguments on the other constitutional issues.

22. The Commonwealth additionally observes that some federal courts have questioned whether the irrebuttable presumption doctrine is obso-

that sexual offender registration does not involve a restraint on life, liberty, or property constituting an unconstitutional irrebuttable presumption, citing to *Dean v. McWherter*, 70 F.3d 43 (6th Cir.1995). In that case, the Court of Appeals opined that an irrebuttable presumption "can only violate due process if it operates to deprive convicted sex offenders of a protected interest." *Id.* at 46. The court, therefore, held that a Tennessee statute declaring sex offenders mentally ill did not create an unconstitutional irrebuttable presumption because reputation, under federal constitutional law, is not in and of itself protected under the due process clause unless it is linked to another deprivation of life, liberty, or property, such as involuntary commitment to a mental hospital. *Id.* at 45 (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (holding that reputation is not protected under the federal due process clause in the absence of a "more tangible" injury, creating the so-called "stigma-plus" line of federal cases concerning reputation)). While an accurate description of federal law, the Commonwealth fails to speak to the Pennsylvania Constitution's inclusion of reputation as an inherent right under Article I, Sections 1 and 11, as discussed *infra*.

The Commonwealth also argues that SORNA does not create any presumptions not already encompassed in the adjudication of the Juveniles' felony sexual offenses. It emphasizes that the Juveniles' offenses are already public pursuant to 42 Pa.C.S. § 6307(b)(1) (regarding public availability of juveniles' records involving acts that would be felonies if committed by an adult). Thus, the Commonwealth asserts that SORNA merely requires registration without commenting on the dangerousness of the individual or the likelihood of reoffense.

lete. Com. Brief at 45 (citing *Black v. Snow*, 272 F.Supp.2d 21, 30–31 (D.D.C.2003) (opining that "the irrebuttable presumption analysis has simply collapsed into the ordinary equal protection/due process analysis" except in cases involving fundamental interests), *aff'd Black v. Ashcroft*, 110 Fed.Appx. 130 (D.C.Cir.2004) (affirming *per curiam* in an unpublished decision, specifically not addressing the due process claim)).

It further maintains that the trial court's holding can be summarized as "juveniles are different." Com. Brief at 46. However, the Commonwealth posits that the legislature in enacting SORNA recognized that children are different and significantly limited the reach of SORNA registration requirements for juvenile offenders by applying them only to those who commit the most serious crimes, when they are at least fourteen, and providing for termination of registration after twenty-five years. Thus it asserts that our decision in *Williams II*, 574 Pa. 487, 832 A.2d 962, finding previous Megan's Law registration requirements to be constitutional, compels the conclusion that SORNA's registration requirements are likewise constitutional. On these premises, the Commonwealth urges this Court to vacate the trial court's order declaring SORNA unconstitutional as applied to juveniles.

Conversely, the Juveniles maintain that SORNA's registration requirements infringe upon juvenile offenders' constitutional rights. As relevant to our analysis, the Juveniles, *inter alia*, assert that SORNA violates the irrebuttable presumption doctrine through the presumption that all sexual offenders pose a high risk of reoffense.[23]

In this regard, the Juveniles assert that the research demonstrates that children are different than adults, and specifically that juvenile sexual offenders are dissimilar from adult sexual offenders. The Juveniles assert that juvenile sexual

**23.** The Juveniles also claim SORNA is unconstitutional under the *ex post facto* clause, the protection against cruel and unusual punishment, and substantive due process, which are not addressed by this opinion. Although more directly related to the Juveniles' arguments regarding the *ex post facto* clause and cruel and unusual punishment, the Juveniles detail why they view SORNA's registration requirements as more onerous than prior iterations of Megan's Law registration requirements. In addition to applying registration requirements to juveniles for the first time, the Juveniles note that SORNA requires a plethora of information, set forth *supra* at note 8, which must be updated in person quarterly and within three days of any change in the information. This requirement, according to the Juveniles, is especially difficult for children, given that they attend school and often must obtain transportation to the limited number of approved registration centers on very short notice.

offenders have a much lower rate of reoffense than their adult counterparts. Indeed, they aver that youthful sexual offenders have similar recidivism rates to other juvenile offenders who are not required to register. Juveniles' Brief at 20–22 (discussing research including the Pennsylvania Juvenile Court Judges' Commission's report entitled *The Pennsylvania Juvenile Justice Recidivism Report: Juveniles with Cases Closed in 2007, 2008, or 2009* at 85 (Nov. 2013), *found at* Appendix to the Juveniles' Brief at A153 (stating that the recidivism rate for juvenile sexual offenders to commit another sexual offense is less than two percent)). The Juveniles contend that registration therefore should not be tied to the offense but instead to an individualized assessment of the likelihood of reoffense.

The Juveniles also maintain that registration of juvenile sexual offenders does not improve public safety, given that few juvenile sexual offenders recidivate. Instead, they contend that registration could have the opposite result because it erects obstacles for rehabilitation and impedes a child's pathway to a normal productive life through continuously reinforcing the unlikely supposition that the youth has "a high risk of committing additional sexual offenses." 42 Pa.C.S. § 9799.11(a)(4). The Juveniles argue that children subject to registration requirements suffer various irreparable harms, including difficulty obtaining housing, employment, and schooling, and suffer resulting psychological effects which can lead to depression and personal safety risks. They contend that lifetime registration as a sex offender contradicts the underlying purpose of Pennsylvania's juvenile justice system, which emphasizes rehabilitation to allow children to become productive members of society.

For reasons similar to those discussed in our review of the trial courts' decisions, the Juveniles assert that this infringement of juveniles' right to reputation, by deeming them to pose a high risk of reoffense, is unconstitutional because it violates the irrebuttable presumption doctrine. The Juveniles observe that the Adam Walsh Child Protection and Safety Act provides that each state may evaluate the constitutionality of

its state enactments. 42 U.S.C. § 16925. If a state finds it unconstitutional, the provision can be stricken without the loss of federal funds. *Id.* Accordingly, the Juveniles urge the Court to affirm the trial court and declare SORNA unconstitutional as it applies to juveniles.

## IV.  Analysis

As we have repeatedly recognized, a party challenging a statute must meet the high burden of demonstrating that the statute "clearly, palpably, and plainly violates the Constitution." *Nixon v. Commonwealth, Dep't of Pub. Welfare,* 576 Pa. 385, 839 A.2d 277, 286 (2003) (internal quotation marks and citation omitted). While the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society, any restriction is subject to judicial review to protect the constitutional rights of all citizens. *Id.* As detailed below, we conclude that SORNA's registration requirements violate juvenile offenders' due process rights by utilizing the irrebuttable presumption that all juvenile offenders "pose a high risk of committing additional sexual offenses," 42 Pa.C.S. § 9799.11(a)(4), because that presumption is not universally true and a reasonable alternative means currently exists for determining which juvenile offenders are likely to reoffend. *Clayton,* 684 A.2d at 1063 (applying irrebuttable presumption doctrine).

This Court's irrebuttable presumption doctrine derives from a series of United States Supreme Court cases in the 1970s involving statutes that infringed upon protected interests or denied benefits by utilizing presumptions that the existence of one fact was statutorily conclusive of the truth of another fact. The High Court concluded that, absent a meaningful opportunity to contest the validity of the second fact, the statutory irrebuttable presumptions deprived the citizenry of due process of law. *See, e.g., Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (holding statute unconstitutional for employing an irrebuttable presumption that those who lived out-of-state when they applied to a state university should be forever deemed out-of-state residents for purposes

of tuition calculation, even if they later become bona fide residents); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (holding unconstitutional a statute providing for children to be declared dependent and removed from their unwed fathers' custody based on the presumption that unwed fathers are unfit parents); *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (concluding that due process was violated by statute requiring the suspension of a driver's operating privileges following an accident, if the driver did not carry insurance or post security, without providing a pre-suspension forum for determining whether the driver was likely to be held at fault).[24]

This Court applied the irrebuttable presumption doctrine in 1995 in *Clayton.* We summarized the doctrine as providing that "irrebuttable presumptions are violative of due process where the presumption is deemed not universally true and a reasonable alternative means of ascertaining that presumed fact are available." *Clayton,* 684 A.2d at 1063 (citing *Vlandis,* 412 U.S. at 452, 93 S.Ct. 2230). As support for the doctrine, we reiterated that "the essential requisites [of due process] are notice and meaningful opportunity to be heard," and we recognized that "a hearing which excludes consideration of an element essential to the [relevant] decision" does not comport with due process. *Id.* at 1064–65 (quoting *Bell,* 402 U.S. at 542, 91 S.Ct. 1586).

Turning to the facts in *Clayton,* we considered a statute and related regulations requiring the revocation of a driver's operating privileges for a period of one year as a result of a single epileptic seizure, irrespective of whether a doctor deemed the

24. Our Court has recognized that the United States Supreme Court limited the irrebuttable presumption doctrine in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), by refusing to apply it in cases involving social welfare legislation. *See Clayton,* 684 A.2d at 1063–64. Moreover, we recognized the High Court's inability to achieve a consensus regarding the applicability of the irrebuttable presumption doctrine in *Michael H. v. Gerald D.,* 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91 (1989), where the justices, *inter alia,* debated whether the party asserting the doctrine had an interest protected by the due process clause. *See Clayton,* 684 A.2d at 1063 n. 5.

individual unfit to drive.[25]  In contrast to the statutory presumption, evidence demonstrated that symptoms and frequency of epileptic seizures varied widely between individuals, revealing that the presumption was not universally true. While the procedure provided a hearing regarding the fact of the seizure, we concluded that the hearing did not provide a meaningful opportunity to rebut the statutory presumption that a single seizure rendered the individual unfit to drive. *Id.* at 1065.  Therefore, we concluded that the hearing did not comport with due process.

We further concluded that an irrebuttable finding of incompetence to drive premised upon a single seizure could not be sustained based on the state's important interest in maintaining the safety of Pennsylvania's highways.  We held that, while the interest in precluding unsafe drivers from taking to Pennsylvania's roads was important, it did not justify the recall of a licensee's operating privileges without first affording him a meaningful hearing on his competency to drive. *Id.* at 1065.  We elaborated that "since competency to drive is the paramount factor behind the instant regulations, any hearing which eliminates consideration of that very factor is violative of procedural due process." *Id.*

More recently, the Commonwealth Court similarly applied the irrebuttable presumption doctrine in *D.C. v. Sch. Dist. of Philadelphia*, 879 A.2d 408 (Pa.Cmwlth.2005), which, like the case at bar, involved juveniles who had been adjudicated delinquent of specified offenses.  The challenged statute in *D.C.* automatically excluded juveniles from regular public school classrooms upon their return from juvenile placement or criminal conviction and sent them instead to alternative education settings.  The statute "relie[d] upon the basic fact of adjudication of delinquency to justify a presumed fact, *i.e.* that all these students are dangerous or disruptive, with no opportunity to rebut the presumption." *Id.* at 416.  The juveniles in *D.C.* asserted that the statute, which labeled them as dangerous and disruptive, violated their right to reputation under the

---

**25.**  We initially recognized that a driver's operating privilege constitutes a constitutionally protected interest under the due process clause, *id.* at 1063 n. 5.

Pennsylvania Constitution, as discussed *infra*. The Commonwealth Court agreed that the juveniles' due process rights were violated absent a meaningful opportunity to challenge the presumption "that certain returning students [were] not fit for the regular classroom, regardless of whether the student preformed in an exemplary manner during juvenile placement or otherwise d[id] not pose a threat to the regular classroom setting." *Id.* at 418.

Applying the irrebuttable presumption doctrine as described in *Clayton* and *D.C.* to the case at bar, we consider whether juvenile offenders have asserted an interest protected by the due process clause that is encroached by an irrebuttable presumption, whether the presumption is not universally true, and whether a reasonable alternative means exists for ascertaining the presumed fact. *Clayton*, 684 A.2d at 1063.

## A. Protected Interest

As stated, the Juveniles assert that SORNA's lifetime registration provisions impact juvenile offenders' right to reputation under the Pennsylvania Constitution. This Court has recognized that the right to reputation, although absent from the federal constitution, is a fundamental right under the Pennsylvania Constitution.[26] *See R. v. Commonwealth, Dep't of Pub. Welfare*, 535 Pa. 440, 636 A.2d 142, 149 (1994); *Hatchard v. Westinghouse Broadcasting Co.*, 516 Pa. 184, 532 A.2d 346, 351 (1987); *Moyer v. Phillips*, 462 Pa. 395, 341 A.2d

**26.** Specifically, Article I, Section 1 of the Pennsylvania Constitution designates the right to reputation as an inherent and indefeasible right:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. I, § 1. Additionally, Article I, Section 11 similarly provides for the protection by due course of law of a person's reputation, along with lands, goods and person:

> All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct.

*Id.* I, § 11.

441, 443 (1975); *Meas v. Johnson,* 185 Pa. 12, 39 A. 562, 563 (1898).

As the Juveniles emphasize, SORNA explicitly declares that sexual offenders, including juvenile offenders, "pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. § 9799.11(a)(4). Indeed, a primary purpose of SORNA is to inform and warn law enforcement and the public of the potential danger of those registered as sexual offenders. Moreover, even without this language, the common view of registered sexual offenders is that they are particularly dangerous and more likely to reoffend than other criminals. *See, e.g., B.B.* at 19 ("Common sense, as well as our society's perception of Megan's Law registrants, would lead an average person of reasonable intelligence to conclude that there is something dangerous about the registrant."); Juveniles' Brief at 20 (referencing research regarding public perceptions of sexual offenders). As argued by the Juveniles and found by the trial court, registration also negatively affects juvenile offenders ability to obtain housing, schooling, and employment, which in turn hinders their ability to rehabilitate. Tr. Ct. Op. at 19.[27] Thus, SORNA registration requirements, premised upon the presumption that all sexual offend-

27. The enduring effect of registration on a juvenile's reputation was most poignantly described by Justice Pfeifer from our sister state of Ohio:

For a juvenile offender, the stigma of the label of sex offender attaches at the start of his adult life and cannot be shaken. With no other offense is the juvenile's wrongdoing announced to the world. Before a juvenile can even begin his adult life, before he has a chance to live on his own, the world will know of his offense. He will never have a chance to establish a good character in the community. He will be hampered in his education, in his relationships, and in his work life. His potential will be squelched before it has a chance to show itself. A Juvenile—one who remains under the authority of the juvenile court and has thus been adjudged redeemable—who is subject to sex-offender notification will have his entire life evaluated through the prism of his juvenile adjudication. It will be a constant cloud, a once-every-three-month reminder to himself and the world that he cannot escape the mistakes of his youth. A youth released at 18 would have to wait until age 43 at the earliest to gain a fresh start. While not a harsh penalty to a career criminal used to serving time in a penitentiary, a lifetime or even 25-year requirement of community

ers pose a high risk of recidivating, impinge upon juvenile offenders' fundamental right to reputation as protected under the Pennsylvania Constitution.

Importantly, SORNA does not provide juvenile offenders a meaningful opportunity to challenge the presumption. While a juvenile offender is provided an opportunity to be heard regarding the adjudication of delinquency for the relevant crime, the delinquency hearing does not consider the relevant question of whether the juvenile offender is at risk of reoffense. Instead, the juvenile offender is automatically designated a sexual offender solely as a result of the delinquency adjudication under Section 9799.12 (defining "juvenile offender" and "sexual offender") and 9799.13 (entitled "Applicability"), with the attendant presumption of a high risk of reoffense. Moreover, we reject the suggestion that a Section 9799.17 hearing twenty-five years in the future, only upon perfect compliance with the registration requirements, provides an opportunity to be heard on the question of likelihood of recidivating. As we noted in *Clayton*, a process which eliminates consideration of the paramount factor, in this case the likelihood of committing additional sexual offenses, does not provide procedural due process, as it blocks the opportunity to be heard on the relevant issue.[28] Accordingly, we conclude that the Juveniles have asserted a constitutionally protected interest in their reputation that has been encroached by the use of an irrebuttable presumption.

### B. Universality

We additionally agree with the Juveniles' assertion and the trial court's holding that SORNA's presumption that sexual

notification means everything to a juvenile. It will define his adult life before it has a chance to truly begin.

*In re C.P.*, 131 Ohio St.3d 513, 967 N.E.2d 729, 741–42 (2012).

28. We observe that the Ohio Supreme Court also held that SORNA's registration requirements violated due process because they lacked fundamental fairness by automatically imposing registration requirements on juveniles without procedural safeguards generally provided in the juvenile system for consideration of a juvenile's lessened culpability and greater potential for rehabilitation. *In re C.P.*, 967 N.E.2d at 746–50.

offenders pose a high risk of recidivating is not universally true when applied to juvenile offenders. As credited by the trial court, studies suggest that many of those who commit sexual offenses as juveniles do so as a result of impulsivity and sexual curiosity, which diminish with rehabilitation and general maturation. *See* Tr. Ct. Op. at 17–18; *see also* Halbrook, Amy, *Juvenile Pariahs*, 65 Hastings L.J. 1, 11–12 (2013). While adult sexual offenders have a high likelihood of reoffense, juvenile sexual offenders exhibit low levels of recidivism (between 2–7%), which are indistinguishable from the recidivism rates for non-sexual juvenile offenders, who are not subject to SORNA registration. *See* Tr. Ct. Op. at 18 (observing that an extensive, meta-analysis of sixty-three studies involving 11,200 children found a sexual recidivism rate of 7.09% compared to 13% for adults); *The Pennsylvania Juvenile Justice Recidivism Report* at 85, *found at* Appendix to the Juvenile's Brief at A153 (finding rate of reoffense two years after closure of case to be less than 2%); *see also* Halbrook, 65 Hastings L.J. at 13–15 (discussing studies indicating low reoffense rates for juvenile sexual offenders); *cf. Commonwealth v. Lee,* 594 Pa. 266, 935 A.2d 865, 885 (2007) (observing in regard to adult sexual offenders that "[t]here is little question that the threat to public safety and the risk of recidivism among sex offenders is sufficiently high to warrant careful record-keeping and continued supervision."). Thus, the vast majority of juvenile offenders are unlikely to recidivate.

Moreover, this research is corroborated by societal knowledge of the distinctions between juveniles and adults. *See Miller,* 132 S.Ct. at 2464–65 (noting that scientific research involving adolescents and their brain development supported "what 'any parent knows'" regarding fundamental differences between juveniles and adults). Pennsylvania has long noted the distinctions between juveniles and adults and juveniles' amenability to rehabilitation. Pennsylvania utilizes courts which are specifically trained to address the distinct issues involving youth, and are guided by the concepts of balanced and restorative justice. Indeed, these goals are evident in the

introductory section of the Juvenile Act, which instructs that the Act must be construed as follows:

> to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S. § 6301(b)(2). While our courts are mandated to be always watchful of juveniles' rehabilitation, while also providing accountability to the victim and society, SORNA's automatic registration removes the juvenile judges' ability to consider the rehabilitative prospects of individual juvenile sexual offenders.[29]

Relevantly, the United States Supreme Court has also recently explored the distinctions between juveniles and adults in a significant series of cases. *See, e.g., Miller,* —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (declaring unconstitutional mandatory life imprisonment without parole for crimes committed as a juvenile); *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (prohibiting imposition of life without parole for non-homicide crimes committed as a juvenile); *Roper,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (forbidding imposition of death penalty on those who commit offenses as juveniles).[30] Most recently, in *Miller,* the Court delineated "three significant gaps between juveniles and

---

**29.** As an example, we highlight the frustration of one trial judge at being bound to apply the lifetime registration to a teenager for one act of non-violent, consensual intercourse, criminalized under 18 Pa.C.S. § 3121(c), where the facts of the case suggested that the child was unlikely to reoffend and "an excellent candidate for complete rehabilitation." Juveniles' Brief at 77–78, citing *In re: O.M.,* No. CP–65–JV–551–2012 (CP Westmoreland May 2, 2013) (appeal stayed in Superior Court, 852 WDA 2013, May 16, 2014, pending decision in the case at bar).

**30.** While we recognize that these cases address a very distinct constitutional issue of cruel and unusual punishment, the High Court's observations regarding the basic distinctions between children and adults nonetheless inform our consideration of the likelihood of reoffense.

adults" that require treating delinquent children differently than adult criminals:

> First, children have a " 'lack of maturity and an underdeveloped sense of responsibility,' " leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S. at 569, 125 S.Ct. 1183. Second, children "are more vulnerable ... to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.*, at 570, 125 S.Ct. 1183.

*Miller*, 132 S.Ct. at 2464 (alterations in original).

As sagely noted by the trial court, these distinctions between adults and juveniles are particularly relevant in the area of sexual offenses, where many acts of delinquency involve immaturity, impulsivity, and sexual curiosity rather than hardened criminality, or in the words of the United States Supreme Court, "irretrievable depravity." *Id.* (alterations omitted); Tr. Ct. Op. at 18–19. We agree with the Juveniles that SORNA's registration requirements improperly brand all juvenile offenders' reputations with an indelible mark of a dangerous recidivist, even though the irrebuttable presumption linking adjudication of specified offenses with a high likelihood of recidivating is not "universally true." *Clayton*, 684 A.2d at 1063.

## C. Reasonable alternative means

Finally, we consider whether there exists a "reasonable alternative means of ascertaining th[e] presumed fact" that a juvenile offender poses a high risk of recidivism. *Id.* A reasonable alternative, in fact, is already in use in Pennsylvania under SORNA. As discussed *supra* at 419–20, 107 A.3d at 8–9, SORNA provides for individualized assessment for all sexual offenders convicted of a Tier I, II, or III offense by the SOAB for designation of sexually violent predators. 42 Pa.

C.S. § 9799.24. Moreover, SORNA specifically mandates individualized assessment of juveniles who have been adjudicated delinquent of specified crimes and who are committed to an institution nearing their twentieth birthday to determine whether continued involuntary civil commitment is necessary. *Id.* § 9799.24(h); *see also id.* § 6358 (Assessment of delinquent children by the State Sexual Offenders Assessment Board). A similar process could be utilized to assess which juvenile offenders are at high risk to recidivate.[31] We, therefore, conclude that individualized risk assessment, as used in other provisions of SORNA, provides a reasonable alternative means of determining which juvenile offenders pose a high risk of recidivating.

Given that juvenile offenders have a protected right to reputation encroached by SORNA's presumption of recidivism, where the presumption is not universally true, and where there is a reasonable alternative means for ascertaining the likelihood of recidivating, we hold that the application of SORNA's current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by utilizing an irrebuttable presumption.

## V. Conclusion

Accordingly, we affirm the determination of the trial court that the application of SORNA's lifetime registration provision as applied to juveniles is unconstitutional.

Former Justice McCAFFERY did not participate in the decision of this case.

---

**31.** Alternatively, we observe that Oklahoma has provided a different model for individualized risk evaluation of juvenile offenders. Under the Oklahoma statute, a district attorney must petition for a specific juvenile to be included on the registry. Upon this application, the court orders an evaluation of the juvenile to determine "whether the juvenile offender represents an ongoing serious or aggressive threat to the public or children under sixteen (16) years of age." Okla. Stat. Ann. tit. 10A, § 2-8-104. Only after such a determination is a juvenile included on the sexual offender registry.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN and TODD join the opinion.

Justice STEVENS files a dissenting opinion.

Justice STEVENS, dissenting.

I find SORNA's registration requirements do not violate a juvenile offender's due process rights by creating an unconstitutional, automatic and irrebuttable presumption that every juvenile adjudicated delinquent of enumerated sexual offenses is likely to be a recidivist. For that reason, I respectfully dissent.

The primary purpose of the General Assembly in enacting SORNA was to protect the public, especially women, from violent sexual offenders. *See* 42 Pa.C.S. § 9799.10. The General Assembly deemed it reasonable to require a narrowly defined class of older juvenile offenders who have been adjudicated delinquent of violent, sexually charged crimes to adhere to SORNA's non-punitive collateral consequences until the twenty-five year time period elapses, and in my view our Constitution does not require this Court to substitute its judgment for that of the duly elected Legislature. The adjudicated delinquent sex offender's "right to reputation" under such circumstances should not have precedence over a rape victim's anguish that very well may last a lifetime.

The strong presumption that a legislative enactment is constitutional is well-settled, and a statute will not be declared unconstitutional unless it "clearly, palpably and plainly" violates the Constitution. *Commonwealth v. Craven*, 572 Pa. 431, 436, 817 A.2d 451, 454 (2003). Further, one who questions an Act's constitutionality bears a heavy burden of persuasion. *Commonwealth v. MacPherson*, 561 Pa. 571, 580, 752 A.2d 384, 388 (2000).

The Majority finds SORNA to be unconstitutional based upon its use of an irrebuttable presumption. Specifically, the Majority maintains that SORNA's lifetime registration provision under 42 Pa.C.S.A. § 9799.15(a) creates an irrebuttable presumption of a high likelihood of recidivism which automati-

cally results in a lifetime registration requirement on the part of a juvenile who is adjudicated delinquent of an enumerated crime; however, the registration requirement applies only to those juvenile offenders who were over the age of fourteen at the time they committed one of four, Tier Three offenses: Rape, IDSI, Aggravated Indecent Assault, or their inchoate offenses (attempt, conspiracy and solicitation). The Legislature recognized violent sexual crimes such as rape must be treated as the serious crimes they are.

Moreover, unlike adult offenders who fall under the dictates of SORNA, a juvenile may have his registration requirement terminated after twenty-five years if he or she has not committed any subsequent offenses graded as a misdemeanor of the second degree or higher, or punishable by more than a year in prison, and completes successfully court-ordered supervision without revocation and a treatment program for sexual offenders. 42 Pa.C.S.A. § 9799.17(a). In requiring this class of juveniles to register upon adjudication, SORNA does not *per se* violate a juvenile's constitutionally protected interest in his or her reputation, for SORNA does not speak to an individual's likeliness to reoffend. Indeed, the due process protections of the Pennsylvania Constitution are encompassed in this provision, for an individual juvenile offender's behavior is the determinative factor as to whether the registration requirement will, indeed, extend throughout his lifetime.