J-S23005-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JESSIE KING | : | |
| | : | |
| Appellant | : | No. 2636 EDA 2019 |

Appeal from the PCRA Order Entered June 24, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001588-2016

BEFORE: NICHOLS, J., McCAFFERY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED NOVEMBER 10, 2020**

Appellant Jessie King appeals *nunc pro tunc* from the order dismissing his untimely second petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Appellant argues that the PCRA court erred by dismissing his petition as untimely and raises several issues relating to Subchapter I[1] of the Sexual Offender Registration and Notification Act (SORNA). We vacate and remand for further proceedings consistent with this memorandum.

The PCRA court summarized the underlying facts of this matter as follows:

> On November 3, 1995, Appellant was convicted of involuntary deviate sexual intercourse [(IDSI)] and corruption of minors [at CP-51-CR-1231201-1993 and CP-51-CR-1231291-1993 based on incidents that occurred on November 17, 1993]. The [trial c]ourt

---

[1] 42 Pa.C.S. §§ 9799.51-9799.75 (eff. Feb. 21, 2018).

sentenced Appellant to seven and one half to twenty years of incarceration.

On October 24, 1995, Megan's Law I[2] was enacted, which applied retroactively to offenders who were convicted before the effective date of the statute[, May 22, 1996,] and were serving sentences at the time the law was enacted.

On December 20, 2011, SORNA [I] was enacted and became effective on December 20, 2012. 42 Pa.C.S. § 9799.14(d)(7). Under SORNA [I], the offense of [IDSI] was classified as a Tier III sexual offense. An individual convicted of a Tier III sexual offense is required to register with the Pennsylvania State Police for life. Accordingly, Appellant's registration was extended to a lifetime requirement.

Trial Ct. Op., 10/7/19, at 1.

On June 13, 2016, Appellant entered an open guilty plea to one count of failure to comply with registration of sexual offender requirements (failure to register).[3] On July 26, 2016, the trial court sentenced Appellant to a term of forty to one hundred and twenty months' incarceration. Appellant did not file post-sentence motions or a direct appeal.

On July 19, 2017, our Supreme Court decided **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) (plurality). The **Muniz** Court held that SORNA I was "punitive in effect . . . ." **Muniz**, 164 A.3d at 1218. The Court also concluded that the former version of SORNA violated *ex post facto*

---

[2] Megan's Law I became effective on May 22, 1996, and required defendants convicted of IDSI to register for ten years as a sex offender. **See** 42 Pa.C.S. § 9793(b) (repealed 2000). This ten-year registration applied "to all offenders convicted of an offense equivalent to an offense set forth in § 9793(b) before the effective date of this section who remain[ed] incarcerated or on parole on the effective date of this section." **See** 42 Pa.C.S. § 9799.6 (repealed 2000).

[3] 18 Pa.C.S. § 4915.1(a)(1).

principles when applied to individuals who, like Appellant, committed a sexual offense before December 20, 2012, the effective date of the former version of SORNA. **See id.** at 1223; **see also Commonwealth v. Lippincott**, 208 A.3d 143, 150 (Pa. Super. 2019) (*en banc*).

In response to **Muniz**, the General Assembly amended SORNA I to include Acts 10 and 29 of 2018 (SORNA II). **See** 2018, Feb. 21, P.L. 27, No. 10 (Act 10); **see also** 2018, June 12, P.L. 140, No. 29, (Act 29). SORNA II divides sex offender registrants into two distinct subchapters – Subchapter H, which includes individuals who were convicted of a sexually violent offense that occurred on or after December 20, 2012, and Subchapter I, which includes individuals who were convicted of a sexually violent offense that occurred "on or after April 22, 1996, but before December 20, 2012," or who were required to register under a former sexual offender registration law on or after April 22, 1996, but before December 20, 2012, and whose registration requirements had not yet expired. **See** 42 Pa.C.S. § 9799.11(c) and 42 Pa.C.S. § 9799.52, respectively.

On February 26, 2018, Appellant filed a counseled first PCRA petition challenging his conviction for failure to register. On May 4, 2018, the PCRA court dismissed the petition as untimely. Appellant appealed the PCRA court's order, but later filed a praecipe to discontinue the appeal,[4] which this Court certified on August 20, 2018.

---

[4] Appellant indicated that his claim was moot in light of **Muniz.**

On October 29, 2018, Appellant filed the instant counseled PCRA petition challenging his obligation to register under SORNA II.[5]  PCRA Pet., 10/29/18. Appellant argued that there was "little difference between the burdens placed on SORNA registrants and Subchapter I registrants.  Although Subchapter I purports to fill the void left by *Muniz* . . . it is so similar to SORNA . . . that it, like SORNA, cannot be constitutionally applied retroactively."  *Id.* at ¶ 21. Therefore, relying on *Muniz*, Appellant asserted that Subchapter I violated *ex post facto* laws when applied to him retroactively.  *Id.* ¶ at 25.

Appellant also claimed that SORNA II violated both the state and federal constitutions.  *Id.* at ¶ 26.  Specifically, Appellant asserted that SORNA II violates "due process under Articles I and XI of the Pennsylvania Constitution because it creates an irrebuttable presumption that those convicted of enumerated offenses 'pose a high risk of committing additional sexual offenses' depriving those individuals of their fundamental right to reputation." *Id.*  Appellant also argued that SORNA II violated procedural and substantive due process, as it "unlawfully restricts liberty and privacy without notice and an opportunity to be heard" and "deprives individuals of inalienable rights and fails to satisfy strict scrutiny."  *Id.* at ¶ 26(c)-(d).  Appellant also raised several constitutional and illegal sentencing claims based on his conclusion that

---

[5] As is clear from the record, Appellant is challenging his lifetime registration requirement under Subchapter I, which stems from his 1995 conviction for IDSI.  Although neither party addressed this issue, Appellant misfiled the instant petition under the above-captioned case involving his failure to register conviction when the petition should have been filed under or transferred to the case involving his IDSI conviction at CP-51-CR-1231201-1993.

SORNA II "constitutes criminal punishment." *Id.* at ¶ 26(e)-(l). Ultimately, Appellant concluded that there were "no valid registration schemes that can be enforced against [Appellant]" and that "whether as a matter of PCRA relief or a writ of *habeas corpus*, [Appellant] cannot be required to register as a sex offender."[6] *Id.* at ¶¶ 22, 32.

On May 28, 2019, the PCRA court issued a Rule 907 notice. Appellant filed a response arguing that although his petition was untimely under the PCRA, the application of Subchapter I "represent[ed] a modification of [Appellant's] sentence" and "restarted the clock for purposes of challenging that sentence." Appellant's Rule 907 Resp., 5/28/19, at 4 (unpaginated). On June 24, 2019, the PCRA court dismissed Appellant's petition.

On August 28, 2019, Appellant filed a counseled motion requesting that the PCRA court reinstate his PCRA appeal rights *nunc pro tunc*. PCRA Pet., 8/28/19. Therein, Appellant's counsel explained that Appellant intended to appeal the PCRA court's June 24, 2019 dismissal order and that he lost his PCRA appeal rights "through no fault of his own." *Id.* at 1 (unpaginated). On August 30, 2019, the PCRA court issued an order granting Appellant's motion and stating that Appellant had an additional thirty days to file an appeal.

On September 9, 2019, Appellant filed a notice of appeal and subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued a Rule 1925(a) opinion concluding that Appellant's PCRA petition

---

[6] Appellant did not raise any claims relating to his 2016 conviction for failing to register as a sex offender.

was untimely and that, therefore, the PCRA court did not have jurisdiction to address Appellant's claims.

On July 21, 2020, our Supreme Court issued its decision in **Commonwealth v. Lacombe**, 234 A.3d 602 (Pa. 2020). The **Lacombe** Court rejected the Commonwealth's argument that trial courts lacked jurisdiction to consider challenges to sex offender registration requirements outside the framework of the PCRA. **Id.** at 617-18. Further, the **Lacombe** Court noted that Subchapter I was "markedly different from the version of SORNA invalidated in **Muniz**." **Id.** at 606. Accordingly, the **Lacombe** Court applied the same **Mendoza-Martinez**[7] framework employed by the Court in **Muniz**, ultimately concluding that "Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto laws*." **Id.** at 605-06.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Did the [PCRA] court err in dismissing this matter without a hearing because Appellant filed a timely [PCRA petition], as Appellant became subject to the registration requirements anew under Act 29, Subchapter I, which subjected Appellant to new registration requirements and therefore, represented a modification of Appellant's sentence?

2. Did the [PCRA] court err in denying [Appellant's PCRA petition] without a hearing because it failed to find that Act 29 and its registration requirements violated the United States and Pennsylvania Due Process Prohibitions against *ex post facto* laws?

---

[7] **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963).

3. Did the [PCRA court] err in denying [Appellant's PCRA petition] without a hearing when it failed to find that Act 29 and its registration requirements violated the United States and Pennsylvania Constitutions, as it constitutes cruel and unusual punishment because registration is based upon empirically false myths, fails to deter first-time offenders, fails to reduce recidivism, threatens public safety, forces registrants and their families to suffer, creates an impassable barrier to reintegration into law-abiding society, and fails to address each offender individually?

4. Did the [PCRA] court err in denying [Appellant's PCRA petition] without a hearing where it failed to find that Act 29 and its registration requirements violate the United States and Pennsylvania Constitutions' separation of powers doctrine, as it gave judicial powers to the legislature and Pennsylvania State Police?

5. Did the [PCRA] court err in denying [Appellant's PCRA petition] without a hearing because Act 29 and its registration requirements violated [the] United States and Pennsylvania Constitutions' Due Process provision, as it denies the opportunity to be heard and automatically finds dangerousness universally and increases the maximum sentence without proof beyond a reasonable doubt to a jury in violation of *Alleyne v. United States*, 570 U.S. 99 (2013) (in that said provisions are not severable)?

6. Did the [PCRA] court err in denying Appellant's petition without a hearing when it failed to find that Act 29 and its registration requirements violated the United States Constitution and the enhanced protections under the Pennsylvania Constitution, both on its face and as applied?

7. Did the [PCRA] court err in denying [Appellant's PCRA petition] without a hearing when it failed to find Act 29 and its registration requirements violated the United States and Pennsylvania Constitutional Due Process protection, because it deprives Appellant of the right [of] the right to [reputation] under the Pennsylvania Constitution, creates an irrebuttable presumption, treats all offenders universally as high-risk, violates individual punishment, is overly broad and inclusive of offenders and charges, ignores that reasonable alternative[] means exist to identify offender risk, denies any meaningful opportunity to be heard, exceeds the least restrictive means

requirement, fails the narrowly tailored requirements, and otherwise violates substantive due process?

Appellant's Brief at 3-4 (full capitalization omitted).

In his first issue, Appellant asserts that the PCRA court erred in dismissing his petition as untimely under the PCRA. Appellant's Brief at 15. Appellant argues that "the application of the registration requirements of Subchapter I to Appellant has subjected him to registration requirements anew." *Id.* at 18. As such, Appellant claims that Subchapter I "restarted the clock for purposes of challenging the sentence" and, therefore, his PCRA petition was timely. *Id.* Further, Appellant asserts that "[b]y denying the PCRA without a hearing, the lower court improperly denied Appellant the opportunity to make a proper record." *Id.* at 19.

The Commonwealth, referring to several of this Court's previous decisions, responds that the PCRA court properly concluded that Appellant's petition was an untimely PCRA petition. *See* Commonwealth's Brief at 13-15.

The threshold issue of whether a petitioner must raise a claim for post-conviction relief under the PCRA raises a question of law. *See* ***Commonwealth v. Descardes***, 136 A.3d 493, 496-97 (Pa. 2016). Our standard of review is *de novo*, and our scope of review is plenary. *Id.* at 497.

Initially, we note that although Appellant's obligation to register as a sex offender stems from his original IDSI conviction, he challenged his registration requirements by filing a PCRA petition at the docket for his 2016 conviction for failure to register. In any event, as discussed previously, our Supreme

Court recently clarified that petitioners are not required to challenge sexual offender registration statutes through the PCRA or any other specific procedural mechanism. *Lacombe*, 234 A.3d at 617. Specifically, the *Lacombe* Court explained:

> Indeed, we have consistently decided cases regarding sexual offender registration statutes that were challenged via different types of filings. . . . Our approach in this regard takes into account the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final.
>
> This is especially so under the PCRA as many registrants . . . would be ineligible for relief on timeliness grounds. *See* 42 Pa.C.S. § 9545(b)(1) (PCRA petition must be filed within one year of judgment of sentence becoming final unless exception applies). Other registrants may be ineligible because their sentence has expired while their registration requirements continue. *See* 42 Pa.C.S. § 9543(a)(1) (PCRA petitioner must be serving sentence to be eligible for relief). Both situations arise from the fact that the registration period does not begin until registrants are released from prison, which may be well after their sentence has become final or may signal the completion of their sentence. Accordingly, we decline to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes and we thus conclude the trial court had jurisdiction to consider [the appellant's] "Petition to Terminate His Sexual Offender Registration Requirements."

*Id.* at 617-18 (some citations omitted).

Here, in light of *Lacombe*, we agree with Appellant's assertion that the PCRA court had jurisdiction to consider his challenge to Subchapter I. Therefore, we vacate that portion of the PCRA court's order in which it concluded that it lacked jurisdiction to consider Appellant's substantive claims under the PCRA.

In his next several issues, Appellant contends that Subchapter I is punitive and, therefore, it is subject to the constitutional and statutory protections applicable to sentencing. *See* Appellant's Brief at 20-24; 41-53. Specifically, Appellant argues that Subchapter I (1) violates state and federal *ex post facto* laws; (2) constitutes cruel and unusual punishment; (3) violates the separation of powers doctrine by usurping courts' sentencing authority; and (4) violates the requirements of ***Apprendi*** and ***Alleyne***. ***Id.***

Appellant further argues that Subchapter I violates his due process rights under the Pennsylvania constitution. ***Id.*** at 25-40. Specifically, he claims that Subchapter I relies on an irrebuttable presumption that violates his fundamental right to reputation under Article I, Section 1 of the Pennsylvania constitution. ***Id.*** at 25. Referring to various studies on sex offender recidivism rates, Appellant asserts that sex offender registrants "are not universally 'high risk'" and that there is evidence "that most convicted offenders pose very little risk and abide by the standards of proper conduct." ***Id.*** at 30. Further, Appellant claims that there are reasonable alternative means to identify offender risk, including empirical risk-based assessments and sexually violent predator (SVP) assessments. ***Id.*** at 31. Appellant also argues that "[b]y refusing to grant a hearing in this matter, the [PCRA] court deprived Appellant of the opportunity to incorporate . . . important evidence into the record" to support his claim that Subchapter I is overbroad and unconstitutional. ***Id.*** at 15.

The Commonwealth responds that Appellant waived his claims that Subchapter I is punitive by failing to provide any legal precedent or analysis. Commonwealth's Brief at 16. The Commonwealth asserts that Appellant "offers no argument or analysis on this question and merely relies on the *Muniz* decision." *Id.* According to the Commonwealth, "[i]n so doing, Appellant fails to recognize the stark differences between SORNA I, as analyzed in *Muniz*, and the provisions of Subchapter I." *Id.* Further, the Commonwealth asserts that "the only analysis Appellant offers . . . regarding whether Subchapter I is punitive under the *Mendoza*-*Martinez* factors plainly relies on an analysis of Subchapter H, not Subchapter I." *Id.* at 20. Therefore, the Commonwealth concludes that Appellant waived any claim that Subchapter I violates a constitutional sentencing provision, as his arguments "rest on the proposition that Subchapter I is, in fact, punitive." *Id.*

The Commonwealth adds that that Appellant's due process claim is not cognizable under the PCRA. *Id.* at 22. In the alternative, the Commonwealth asserts that Appellant's claim is waived. *Id.* The Commonwealth contends that Appellant's right-to-reputation claim "does not uniquely rely on the requirements imposed by Subchapter I." *Id.* at 23. Therefore, the Commonwealth asserts that Appellant could have raised an identical challenge to his registration requirements under SORNA I at the time of his plea, at sentencing, or on direct appeal. *Id.*

In *Commonwealth v. Smith*, ___A.3d ___, 2020 WL 5755494 (Pa. Super. filed Sep. 28, 2020), the petitioner filed a motion challenging his sex

- 11 -

offender registration requirements under SORNA II. The petitioner, who committed his underlying crimes as a juvenile, argued that SORNA violated his due process rights because it "imposed an irrebuttable presumption of recidivism for juvenile offenders." **Smith**, 2020 WL 5755494 at *1; **see also In re J.B.**, 107 A.3d 1 (Pa. 2014) (holding that SORNA's lifetime registration requirements "violate[d] juvenile offenders' due process rights by utilizing an irrebuttable presumption"). The trial court rejected the petitioner's motion as an untimely PCRA petition and denied relief without addressing his substantive claims. **Id.** On appeal, this Court vacated the trial court's order and remanded the matter for the trial court to address the petitioner's substantive claims. **Id.** at *3.

Here, like the petitioner in **Smith**, Appellant challenged his sex offender registration requirements based, in part, on the irrebuttable presumption doctrine. **See Smith**, 2020 WL 5755494 at *1; **see also Commonwealth v. Torsilieri**, 232 A.3d 567, 587-88 (Pa. 2020) (discussing an adult petitioner's irrebuttable presumption challenge to Subchapter H of SORNA II and remanding the matter to the trial court for further development of the record). Similarly, the trial court dismissed Appellant's petition without addressing his substantive claims. Under these circumstances, we conclude that remand is necessary. **See Smith**, 2020 WL 5755494 at *3.

Accordingly, we vacate the trial court's order dismissing Appellant's petition as untimely under the PCRA and remand the matter to the trial court for further proceedings consistent with this memorandum.[8]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/10/2020</u>

---

[8] Following remand, we direct the trial court to transfer this matter to the docket for Appellant's original IDSI case at CP-51-CR-1231201-1993.