J-S40012-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAVIER ORTEGA | : | |
| | : | |
| Appellant | : | No. 3102 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 16, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001708-2019

BEFORE: NICHOLS, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED APRIL 30, 2024**

Appellant Javier Ortega appeals from the judgment of sentence imposed following his conviction for rape of a child.[1] Appellant raises claims concerning the weight of the evidence, after-discovered evidence, his designation as a Sexually Violent Predator (SVP), and the lifetime registration requirements under Subchapter H of the Sexual Offender Registration and Notification Act[2] (SORNA). We affirm.

The underlying facts and procedural history are well known to the parties. Briefly, Appellant was charged with rape of a child and other offenses based on allegations that he sexually abused his then-thirteen-year-old

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3121(c).

[2] 42 Pa.C.S. §§ 9799.10-9799.42.

stepdaughter (M.M.) on multiple occasions in 2015. The matter proceeded to a bench trial in 2021, during which both the victim and Appellant testified. Ultimately, the trial court found Appellant guilty of rape of a child.

On June 16, 2022, the trial court sentenced Appellant to fifteen to thirty years' incarceration, followed by three years of probation. Appellant was also designated as an SVP, and ordered to comply with Subchapter H's lifetime registration requirements. Appellant subsequently filed a timely post-sentence motion, which was ultimately denied.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises multiple issues, which we have reordered as follows:

1. Whether the verdict of guilty to the charge of rape of a child was against the weight of the evidence?

2. Whether Appellant is entitled to a new trial based upon after-discovered evidence?

3. Whether the trial court erred by designating [A]ppellant as a sexually violent predator?

4. Whether that portion of the sentence imposing SORNA registration requirements should be vacated because [Subchapter H] violates both the Pennsylvania and federal Constitution in the following ways:

   a. Whether [Subchapter H] denies [A]ppellant due process under the Pennsylvania Constitution because it creates an irrebuttable presumption that those convicted of enumerated offenses "pose a high risk of committing additional sexual offenses" depriving those individuals of

- 2 -

their fundamental right to reputation without notice and an opportunity to be heard?

b. Whether [Subchapter H] denies [A]ppellant procedural due process under the fifth and fourteenth amendments to the United States Constitution because it unlawfully restricts liberty and privacy without notice and an opportunity to be heard?

c. Whether [Subchapter H] violates substantive due process under the state and federal Constitutions, U.S. Const. Amend. XIV; Pa. Const. Art I, §1, because SORNA deprives individuals of inalienable rights and fails to satisfy strict scrutiny?

d. Whether the recent amendment to SORNA, Revised Subchapter H, is in all material respects identical to SORNA and therefore a punitive law?

e. Does [Subchapter H], as a penal law, violate the separation of powers doctrine because it usurps the exclusive judicial function of imposing a sentence?

f. Whether [Subchapter H] contravenes the 5th, 6th and 14th Amendments of the United States Constitution and the corresponding protections of the Pennsylvania Constitution because as a criminal punishment, SORNA cannot be imposed without due process, notice and opportunity to contest its imposition, and ensuring that each fact necessary to support the mandatory sentence and a sentence beyond the authorized statutory maximum is submitted to a jury and proven beyond a reasonable doubt pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, []570 U.S. 99 (2013)?

g. Whether the imposition of lifetime sex offender registration for all Tier III offenses under [] Subchapter H, is a cruel and unusual punishment in violation of the eighth and fourteenth amendments to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution?

h. Whether Appellant's sentence of lifetime registration pursuant to []Subchapter H, is illegal as it is not a sentencing alternative authorized by Section 9721 of the

>    Judicial Code and the trial court therefore lacked authority to impose such a sentence?
>
>    i. Appellant's sentence of lifetime registration pursuant to SORNA is illegal as the statutory maximum for a rape of a child under Section 3121 (e)(1) of the Crimes Code is forty (40) years.

Appellant's Brief at 5-7 (some formatting altered).

## Weight of the Evidence

Appellant argues that the verdict for rape of a child was against the weight of the evidence. *Id.* at 63. In support, Appellant contends that "the Commonwealth's case stands on the uncorroborated testimony of a single witness[]" who "gave testimony of acts that could not have occurred in the places and at the times she alleged without anyone else knowing." *Id.* at 65. Specifically, Appellant asserts that although the victim stated that the abuse occurred over a protracted period of time, "[t]here was no physical or medical evidence confirming the complainant's claims of sexual abuse[]" and that although there were several other individuals in the residence at the time when the acts of abuse allegedly occurred, the Commonwealth failed to present any of those individuals to corroborate the victim's allegations. *Id.* at 65-66. Finally, Appellant also notes that there was testimony that Appellant "worked many days and hours of the week or had been away from the home for months at time[,]" which "is not only inconsistent with the frequency of sexual assaults, [but also] makes it almost impossible given the victim's claim that she was sexually assaulted 3 to 5 times a week over a period of 3 or more years." *Id.* at 66.

- 4 -

In reviewing a weight claim, this Court has explained:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. The appellate court reviews a weight claim using an abuse of discretion standard.

At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. Issues of witness credibility include questions of inconsistent testimony and improper motive. A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit. . . .

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citations omitted and formatting altered); *see also Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted) (reiterating that the weight of the evidence "is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses" (citation omitted and formatting altered)).

Here, the trial court addressed Appellant's weight claim as follows:

[Appellant's] final claim is that the verdict was against the weight of the evidence. [Appellant] argues M.M.'s testimony was not credible and was contradicted by [Appellant's] own testimony, and

- 5 -

that there was no physical evidence proving the crime. I find these allegations to be meritless.

\* \* \*

The verdict in this case does not shock one's sense of justice. I observed both M.M. and [Appellant] during their testimony and made credibility determinations. I considered and weighed all the evidence presented, including the conflicting testimony and the absence of medical evidence, and reasonably concluded [that Appellant] committed the crime for which he was charged. I submit I rendered a verdict consistent with the weight of evidence.

Trial Ct. Op. at 10-11 (footnote omitted).

Following our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim. *See Jacoby*, 170 A.3d at 1080. Although Appellant suggests that the victim's testimony was not credible, the trial court was "free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses" and we will not re-weigh the trial court's credibility determinations on appeal. *See Talbert*, 129 A.3d at 545. Therefore, Appellant is not entitled to relief on this issue.

**After-Discovered Evidence**

Appellant also claims that he is entitled to a new trial based on after-discovered evidence. Appellant's Brief at 57-58. Specifically, Appellant refers to alleged evidence that M.M. may have fabricated the allegations against Appellant. *Id.*

Our standard of review of a trial court's decision to grant or deny a new trial on the basis of after-discovered evidence is well settled:

[W]e ask only if the court committed an abuse of discretion or an error of law which controlled the outcome of the case. Discretion

is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. If a trial court erred in its application of the law, an appellate court will correct the error.

*Commonwealth v. Padillas*, 997 A.2d 356, 361 (Pa. Super. 2010) (citations and quotation marks omitted).

In order to be granted a new trial based on an after-discovered evidence, a defendant must show that

the evidence (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

*Id.* at 363 (citations omitted). "The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." *Id.* (citations omitted).

Here, the trial court addressed Appellant's claim as follows:

[Appellant] claims that M.M. may have fabricated the allegations due [to Appellant] not allowing her to get a cell phone and that M.M.'s natural father, Neftali Mendez, may have influenced M.M. to implicate [Appellant]. These claims are based on the following incidents disclosed by M.M.'s younger brother, S.M., to family members:

    (1)    When S.M. was approximately 10 years old, just before the allegations in this matter were reported, he witnessed his sister, M.M., ask [Appellant] for a cell phone, which he denied to her because of her "behavior issues." M.M. stormed off and slammed the door. Some days after this, social workers appeared at his school and home asking him questions about abuse involving [Appellant] and M.M.

- 7 -

(2)     When S.M. was approximately 6 years old, he, M.M., and Mr. Mendez were in the car together when Mr. Mendez turned on an audio recording device and asked M.M. if [Appellant] ever physically touched her. She replied, "yes." Mr. Mendez then asked S.M. the same question and told him to answer "yes." When S.M. refused to say "yes," Mr. [Mendez] became angry. S.M. also indicated that between the ages of 6 and 9, Mr. Mendez told him to "always stand up for your sister, even if you have to tell lies."

First, the evidence regarding the cell phone possibly providing a motive for M.M. to lie is not new evidence. The issue was brought out at trial and testified to by [Appellant]. As such, it was not discovered after trial.

Second, the evidence regarding potential influence by Mr. Mendez, even if believed, could have been discovered by due diligence. A defendant has a duty to bring forth relevant evidence on his behalf and cannot claim he discovered new evidence simply because he was not expressly told of that evidence. [*Padillas*, 997 A.2d at 364]. "Likewise, a defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence." *Id.* The question of diligence becomes especially important where [Appellant] has a close, amicable relationship with the potential witness. Here, [Appellant] and S.M. had a step-parent/step-child relationship, they lived together, and by all accounts had a good relationship. [Appellant] failed to show this evidence could not have been discovered with exercise of due diligence.

Trial Ct. Op. at 9-10 (footnotes omitted).

Following our review of the record, we discern no abuse of discretion by the trial court in denying Appellant's motion for a new trial. *See Padillas*, 997 A.2d at 361. As noted by the trial court, Appellant failed to meet the due diligence prong of the test for an after-discovered evidence claim. *See* Trial Ct. Op. at 10. Therefore, Appellant is not entitled to relief. *See Padillas*,

997 A.2d at 363 (explaining that a defendant must prove each prong of the after-discovered evidence test by a preponderance of the evidence).

**SVP Determination**

Appellant next argues that the Commonwealth failed to present clear and convincing evidence establishing that he met the statutory criteria for an SVP. Appellant's Brief at 56. First, Appellant claims that there was no evidence that his conduct was predatory and argues that "his relationship to the victim, that of a stepfather, was not 'initiated, established, maintained or promoted,' in any respect, in order to facilitate or support victimization." *Id.* at 56. Additionally, Appellant contends that there was no evidence that he was likely to reoffend. *Id.* In support, Appellant asserts that Dr. Robert M. Stein, Ph.D.'s assessment was based solely upon court records and documents and he did not conduct a psychological evaluation of Appellant. *Id.* However, defense expert Dr. Frank Datillo, Ph.D testified that he did not agree with Dr. Stein's assessment that "Appellant suffers from a lifelong condition and [further] opined that the risk of re-offense would be significantly reduced by treatment." *Id.* at 57. Therefore, Appellant concludes that he should not be designated as an SVP.

In reviewing an SVP designation, we must determine whether the Commonwealth presented clear and convincing evidence that the defendant meets the statutory definition of an SVP. ***Commonwealth v. Hollingshead***, 111 A.3d 186, 189 (Pa. Super. 2015). "As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light

most favorable to the Commonwealth [as verdict winner]." ***Id.*** (citation omitted). Additionally, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." ***Commonwealth v. Lambert***, 795 A.2d 1010, 1014-15 (Pa. Super. 2002) (citations omitted).

To prove a defendant is an SVP, the Commonwealth must first establish that the defendant was convicted of a sexually violent offense. Then the Commonwealth must prove that the defendant has "a mental abnormality or personality disorder that makes [them] likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12. The statute defines "mental abnormality" as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." ***Id.*** The defendant's conduct must be "predatory," which the statute defines as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained[,] or promoted, in whole or in part, in order to facilitate or support victimization." ***Id.***; ***Commonwealth v. Stephens***, 74 A.3d 1034, 1038 (Pa. Super. 2013); ***see also Commonwealth v. Geiter***, 929 A.2d 648, 651 (Pa. Super. 2007).

In determining whether an individual meets the definition of an SVP, the SOAB evaluates the following factors:

(1) Facts of the current offense, including:

- 10 -

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b).

Here, the trial court addressed Appellant's SVP determination as follows:

At [Appellant's] SVP hearing, the Commonwealth and [Appellant] agreed to the admissibility of the evaluation performed by Dr. Stein. Additionally, [Appellant] offered the report of his own expert, Dr. Frank Dattilio, Ph.D., and the Commonwealth did not object to its admissibility.

As part of the assessment, Dr. Stein reviewed various documents related to [Appellant] and the underlying case, including the affidavit of probable cause, Pennsylvania State Police reports, Childline reports, Child Protective Services records, the SOAB Investigator's report, and prison records. [Appellant] did not participate in the assessment.

Dr. Stein examined all the factors required by law. Notably, Dr. Stein found several factors consistent with sexual deviance, including that [Appellant] had sexual intercourse and digital penetration with a 9-year-old victim; that [Appellant] was substantially older than the victim; that the victim considered [Appellant] to be her step-father; and that [Appellant] "sustained [a] sexual interest in a child" over a two-year period of time. Dr. Stein concluded [Appellant] suffers from a paraphilic disorder, a condition [Appellant] will likely suffer from for his lifetime, and that this condition over-rode his emotional/volitional control and would likely lead to re-offending if given unsupervised access to young girls."

Ultimately, Dr. Stein opined, within a reasonable degree of professional certainty, that [Appellant] "suffers from a Mental Abnormality/Personality Disorder" as defined under SORNA, and that [Appellant] engaged in predatory behavior.

Dr. Dattilio, [Appellant's] own expert, agreed that [Appellant] meets the statutory definition of a sexual violent predator, having opined that [Appellant] suffers from a mental disorder, namely pedophilia, and engaged in predatory behavior. Dr. Dattilio, however, disagreed that [Appellant] suffers from a lifelong condition and opined that the risk of re-offense would be significantly reduced with treatment.

After careful consideration of Dr. Stein's determination of a mental abnormality and predatory behavior, Dr. Dattilio's similar conclusions, and a review of the facts of the instant matter, I found by clear and convincing evidence that [Appellant] was a sexually violent predator. The fact that Dr. Dattilio believes [Appellant's] likelihood to reoffend could be reduced with treatment is but one factor that I considered. The weight of the evidence as a whole supports the SVP designation as required by SORNA. As such, [Appellant's] argument that I erred in designating him an SVP is without merit, and I respectfully ask the [Superior] Court to affirm my decision.

- 12 -

Trial Ct. Op. at 6-7 (footnotes omitted).

On this record, viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that there was sufficient evidence establishing that Appellant met the statutory definition of an SVP. **See Hollingshead**, 111 A.3d at 189. The trial court credited Dr. Stein's testimony that Appellant suffers from a mental disorder and engaged in predatory behavior. **See** Trial Ct. Op. at 7. We will not re-weigh the trial court's credibility determinations on appeal. **See Lambert**, 795 A.2d at 1014-15. Therefore, Appellant's challenge to the SVP determination is meritless, and no relief is due. **See Hollingshead**, 111 A.3d at 189; **Stephens**, 74 A.3d at 1038. For these reasons, we affirm.

### SORNA Registration

In his remaining issues, Appellant challenges his lifetime registration requirements under SORNA. Appellant's Brief at 17-55. Specifically, Appellant claims that Subchapter H violates due process because it creates an irrebuttable presumption, unlawfully restricts liberty and privacy without notice and an opportunity to be heard, and deprives individuals of inalienable rights and fails to satisfy strict scrutiny. **Id.** Appellant also argues that Subchapter H is punitive, constitutes cruel and unusual punishment, and is also an illegal sentence. **Id.**

Appellant's claims "raise questions of law for which our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v.**

*Torsilieri*, 232 A.3d 567, 575 (Pa. 2020) (citation omitted). In resolving such claims, our Supreme Court has explained that

> [i]n addressing constitutional challenges to legislative enactments, we are ever cognizant that "the General Assembly may enact laws which impinge on constitutional rights to protect the health, safety, and welfare of society," but also that "any restriction is subject to judicial review to protect the constitutional rights of all citizens." *In re J.B.*, 107 A.3d 1, 14 (Pa. 2014). We emphasize that "a party challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution."

*Id.* (some citations omitted).

Appellant's instant claims are identical to those raised by the defendant in *Commonwealth v. Villanueva-Pabon*, 304 A.3d 1210, 1213-14 (Pa. Super. 2023). In *Villanueva-Pabon*, this Court explained that the Supreme Court "in *Torsilieri* ma[de] clear the importance of the scientific evidence as it pertained to each of the constitutional issues raised[.]" *Id.* at 1217. However, the *Villanueva-Pabon* Court noted that the defendant had "produced no scientific evidence whatsoever to support his claims that underlying legislative policy infringes on [the] appellant's rights[.]" *Id.* at 1218 (citation omitted). Therefore, the *Villanueva-Pabon* Court rejected the defendant's SORNA challenge and concluded that he had failed to demonstrate that Revised Subchapter H "clearly, palpably, and plainly violated [the] constitution[.]" *Id.* (citation and internal quotation omitted).

Here, like the defendant in *Villanueva-Pabon*, Appellant does not provide any scientific evidence to support his constitutional challenge to

SORNA. *See Villanueva-Pabon*, 304 A.3d at 1218. Therefore, Appellant has failed to satisfy his burden to prove that the Revised Subchapter H provisions applicable to him "clearly, palpably, and plainly" violate the constitution. *See Torsilieri*, 232 A.3d at 575; *see also Commonwealth v. Martinez*, 2988 EDA 2022, 2024 WL 659982, at *3-4 (Pa. Super. filed Feb. 16, 2024) (unpublished mem.) (rejecting the appellant's challenge to SORNA and concluding that because the appellant's claims were identical to those raised by the defendant in *Villaneuva-Pabon*, "the same reasoning applies in this case as [the a]pellant did not seek to present any evidence to support his constitutional challenges").[3] Therefore, Appellant is not entitled to relief. Accordingly, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/30/2024

---

[3] *See* Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).