J-S06044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN SCHEER | : | |
| | : | |
| Appellant | : | No. 485 WDA 2024 |

Appeal from the PCRA Order Entered February 21, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0010087-2010

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: March 28, 2025**

Appellant, Justin Scheer, appeals *nunc pro tunc* from the post-conviction court's February 21, 2024 order dismissing, as untimely, his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

In May of 2010, allegations were filed against Appellant in juvenile court stemming from evidence that he sexually assaulted his stepbrother "on an ongoing basis" between August of 2007 and April of 2010, when the victim was approximately 9 to 12 years old and Appellant was between the ages of 14 and 17. N.T. Guilty Plea, 6/13/11, at 6; *see also* Commonwealth's Brief at 2. After the allegations were filed, the Commonwealth petitioned to certify the matter to adult criminal court. *See* Commonwealth's Brief at 2. That petition was granted, with the court's finding that Appellant was "not amendable to supervision, treatment[,] and rehabilitation through the juvenile

system[,]" and noting that Appellant had "pending adult charges on a separate case[.]"[1]  Certification Order, 7/27/10, at 1 (unnumbered).

On June 13, 2011, Appellant entered a guilty plea to aggravated indecent assault of a child (AIA), 18 Pa.C.S. § 3125(b), AIA of a complainant less than 13, 18 Pa.C.S. § 3125(a)(7), and indecent assault of a complainant less than 13, 18 Pa.C.S. § 3126(a)(7).  That same day, the court sentenced Appellant to the agreed-upon term of 2 to 4 years' incarceration, followed by 3 years' probation, for his AIA offense, and no further penalty for his remaining convictions.[2]  Notably, Appellant's conviction for AIA triggered a lifetime registration requirement under the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.51-9799.75.  *See* 42 Pa.C.S. § 9799.55(b)(2) (stating that lifetime registration is required for individuals convicted of AIA between 1996 and 2012).

Appellant did not file a direct appeal.  Instead, on November 23, 2020, he filed a *pro se* PCRA petition.  On March 5, 2021, Appellant also filed a *pro se* motion to vacate his SORNA registration requirement.  Counsel was appointed and filed an amended PCRA petition.  On January 22, 2024, the

---

[1] Specifically, Appellant was charged with various criminal offenses based on an armed robbery he committed in August of 2009 (hereinafter "robbery case").  On September 9, 2010, Appellant pled guilty to robbery, aggravated assault, and two firearm violations in that case.  *See* Commonwealth's Brief at 3 n.9.

[2] The court imposed Appellant's sentence to run concurrently to a term of 5 to 10 years' imprisonment that he was serving in the robbery case.

court filed a Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's petition without a hearing on the basis that it was untimely.  Appellant filed a response, but on February 21, 2024, the court issued an order dismissing his petition. Appellant did not file an appeal.

On March 28, 2024, Appellant filed another petition for post-conviction relief, seeking the reinstatement of his right to appeal from the court's February 21, 2024 order denying his petition.  In that petition, Appellant's counsel alleged that

> in December 2023, the [c]ourt system updated and completely changed the electronic filing portal, totally altering what counsel can "view" when receiving e-service.  During this update, many glitches occur[red] (and continue to occur) wherein a "notice" is sent to counsel, but is not actually emailed; or the email contains no document and counsel has been deemed "served" despite the fact that no document was actually provided to counsel.

PCRA Petition, 3/28/24, at 3.  Counsel further alleged that it was not until March 28, 2024, that she was able to see on the docket that a final order had been entered in this case on February 21, 2024.  *Id.* at 4.  Counsel claimed that she "was not e-served with this notice" and "was not aware that the final [o]rder was on the docket."  *Id.*  Accordingly, she asked that Appellant's right to file an appeal from the February 21, 2024 order be reinstated.

On April 2, 2024, the PCRA court granted the PCRA petition and reinstated Appellant's right to file an appeal from its February 21, 2024 order. On April 18, 2024, Appellant filed a *nunc pro tunc* notice of appeal from the

- 3 -

February 21, 2024 order.[3] It does not appear that the PCRA court ordered Appellant to comply with Pa.R.A.P. 1925(b), and it referred this Court to the discussion in its Rule 907 notice in lieu of a Rule 1925(a) opinion. *See* Order, 4/24/24, at 1 (single page).

Herein, Appellant presents two issues for our review, which we reorder for ease of disposition:

I. The PCRA [c]ourt erred in denying relief because [Appellant's] guilty plea was tendered unknowingly and is therefore invalid because he suffers from lead poisoning and

_____

[3] We recognize that Appellant's petition seeking the reinstatement of his right to appeal from the denial of his first PCRA petition was facially untimely, as it was filed well beyond one year after his judgment of sentence became final in 2011. *See* 42 Pa.C.S. § 9545(b)(1)(i)-(iii) (stating that any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the enumerated exceptions set forth in that section applies). In ***Commonwealth v. Robinson***, 837 A.2d 1157 (Pa. 2003), our Supreme Court held that an untimely petition seeking *nunc pro tunc* appellate relief still must satisfy the PCRA's one-year time-bar. ***Id.*** at 1161-62. Here, Appellant's counsel did not explicitly assert a timeliness exception in the untimely petition seeking the reinstatement of Appellant's right to appeal from the court's February 21, 2024 order. However, we consider counsel's argument in that petition as satisfying the timeliness exception of section 9545(b)(1)(ii), which states that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[.]" 42 Pa.C.S. § 9545(b)(1)(ii). Counsel claimed that she did not receive service of the order denying Appellant's petition and, due to issues with the court's electronic filing system, she was unaware that a final order had been entered until March 28, 2024, the same date on which she filed the PCRA petition seeking the reinstatement of Appellant's appeal rights. The court obviously believed counsel's assertions, as it granted Appellant's petition. We conclude that these facts are sufficient to satisfy a timeliness exception and, thus, the PCRA court had jurisdiction to reinstate Appellant's right to appeal.

could not have appreciated the circumstances to the level necessary to plead guilty. The PCRA [c]ourt had jurisdiction because the claim falls under an exception to the timeliness provisions of the [PCRA].

II. The PCRA [c]ourt erred in denying relief because [Appellant's] SORNA registration requirements must be removed. The PCRA [c]ourt had jurisdiction because the claim falls under an exception to the timeliness provisions of the [PCRA].

Appellant's Brief at 5.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We must begin by addressing the timeliness of Appellant's petition, because the PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of a petition. *See Commonwealth v. Bennett*, 930 A.2d 1264, 1267 (Pa. 2007). Under the PCRA, any petition for post-conviction relief, including a second or subsequent one, must be filed within one year of the date the judgment of sentence becomes final, unless one of the following exceptions set forth in 42 Pa.C.S. § 9545(b)(1)(i)-(iii) applies:

**(b) Time for filing petition.--**

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the

Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). Additionally, section 9545(b)(2) requires that any petition attempting to invoke one of these exceptions "be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

Here, Appellant's judgment of sentence became final in 2011, and thus, his instant petition filed in 2020 is facially untimely. For this Court to have jurisdiction to review the merits thereof, Appellant must prove that he meets one of the exceptions to the timeliness requirements set forth in section 9545(b).

We first address Appellant's argument that he has satisfied the newly-discovered-fact exception of section 9545(b)(1)(ii). Appellant claims that he discovered, in "January of 2022[,]" that he "suffers from lead poisoning." Appellant's Brief at 22. He explains that,

in January of 2022, [he] obtained copies of his [s]ister's blood tests[,] which were performed when she was approximately [one]-year-old. The tests revealed that she had high levels of lead in her system. [Appellant] shared the same home with his [s]ister and was exposed to the same toxins. [Appellant's m]other … confirms that they did have to make repairs to the family home

- 6 -

due to the lead exposure. She contends that the location of the lead was [Appellant's] bedroom.

*Id.* at 23. According to Appellant, this is "proof that he suffered from the effects of lead poisoning[,]" and demonstrates that he "could not have understood the nature of his charges or of the guilty plea process; the factual basis for his guilty plea; or the rights he was waiving by pleading guilty." *Id.* at 25. Thus, he insists his "plea was invalid" and that he has satisfied the newly discovered-fact timeliness exception, warranting relief. *Id.*

We disagree. Notably, Appellant raised this identical claim in a PCRA petition filed in his robbery case. There, Appellant alleged that he discovered the "new fact" of "his sister's January 2022 positive test for lead, which … means that he suffered from lead poisoning at the time of his plea, thus making his plea unknowing." *Commonwealth v. Scheer*, No. 786 WDA 2022, unpublished memorandum at *3 (Pa. Super. filed Apr. 28, 2023) (quoting PCRA Court Opinion (PCO), 7/26/22, at 4 (citation to the record and footnote omitted)). The PCRA court concluded that Appellant had failed to prove that he acted with due diligence in discovering and raising this claim, reasoning:

> Aside from the mental gymnastics required to connect a sibling's lead level in 2022 with Appellant's own lead level at any point, the issue of his sister's lead level is not new. In fact, the issues of her lead level and Appellant's lead level were addressed at the [d]ecertification hearing on July 6, 2010. Counsel for Appellant at the [d]ecertification hearing speculated that Appellant could have lead poisoning because he lived with his sister who tested positive for lead poisoning. This issue is not new as it relates to [section

- 7 -

> 9545(b)(1)](ii)[,] and this [c]ourt correctly found that this exception does not apply.

*Id.* (citing PCO at 4 (citation to transcript and footnote omitted)).

On appeal, we agreed with the PCRA court's analysis. We noted that Appellant "offered no explanation for why he could not have obtained this new fact earlier." *Id.* We also reasoned that,

> [i]f Appellant's underlying claim [that his plea was involuntary due to his alleged lead poisoning] has any traction whatsoever, the involuntariness of his plea must have been known well before he obtained his sister's blood test. Appellant may not have known exactly which medical condition caused him to involuntarily plead guilty, but surely he realized, at some point between 2010 and 2022, that some defect was to blame. In other words, accepting that we cannot examine the merits of the claim,[4] Appellant knew the theory, just not the precise reason. With respect to lead poisoning, Appellant had every reason to investigate that possibility. As the PCRA court pointed out, the issue of lead poisoning in Appellant's home was raised at his decertification hearing. Appellant, anticipating this response, argues that his "ability to raise the claim did not fully develop until he had actual proof, in the form of his sister's blood tests, in 2022." Appellant also argues that he was incarcerated and, even upon his release, "many restrictions were placed on him that continued to prevent him from obtaining the information he needed to support this claim."
>
> We disagree. Appellant's ability to raise his claim may have been stymied by his delay in obtaining the "actual proof," but this does not relieve him of the burden to discover facts that would enable him to press the known claim. Due diligence is a fact-intensive inquiry, and a petitioner must "take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence." *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.

---

[4] *See Commonwealth v. Bennett*, 930 A.2d 1264 (Pa. 2007) (instructing courts to avoid analyzing the merits of the underlying claim when assessing whether an evidentiary hearing is warranted on a newly-discovered-fact claim under section 9545(b)(1)(ii)).

Super. 2015) (citations omitted). Even charitably extending to Appellant the proposition that an alleged lead poisoning would have prevented him from learning that he was suffering from that malady in the intervening years, *cf. Commonwealth v. Cruz*, 852 A.2d 287, 292 (Pa. 2004) (holding that PCRA petitioner was permitted to raise newly-discovered evidence exception where petitioner had suffered a severe brain injury prior to the entry of his plea and wished to show that he had regained competence), Appellant has made no attempt to explain when he first suspected that lead poisoning may have affected his plea. Indeed, Appellant offers no explanation for why (or how) he obtained his sister's blood tests in the first place and why he suspected that his sister's blood test has anything to do with the voluntariness of his plea.

In any event, the fact that the source of this information is his own family member is fatal to his due diligence obligations. As Appellant alludes to, our jurisprudence recognizes that petitioners face difficulties in obtaining information while incarcerated. *See Commonwealth v. Burton*, 158 A.3d 618, 620 (Pa. 2017) (rejecting presumption that information in public record is not "unknown" as applied to incarcerated *pro se* individuals). However, as explained by [*Commonwealth v.*] *Robinson*, [185 A.3d 1055 (Pa. Super. 2018) (*en banc*),] "*Burton* modifies the 'unknown' nature of public facts as applied to incarcerated *pro se* PCRA petitioners, but the case did not modify the due diligence inquiry." [*Id.*] at 1064. Appellant has utterly failed to explain why he could not have obtained the test results earlier than 2022 by simply asking his sister or his mother for a copy of the document. In fact, Appellant does not even state when the report itself was dated. Since his sister was referenced at the decertification hearing, and this document is from her first year of life, it appears that this document existed at the time of Appellant's plea. Based on the foregoing, we agree with the PCRA court that Appellant failed to establish the applicability of the newly-discovered-fact exception.

*Scheer*, No. 786 WDA 2022, unpublished memorandum at *4-5 (some citations omitted).

Our reasoning in *Scheer* applies with equal force to Appellant's attempt to raise the exact same claim in the instant case. Appellant does not state when his sister's lead test was conducted, how he obtained the results of that

test, or why he could not have discovered those results sooner. He also does not clarify when he first suspected that lead poisoning may have affected the validity of his plea, or acknowledge that issues concerning his and his sister's lead levels were raised at his 2010 decertification hearing. Thus, as we concluded in *Scheer*, Appellant has not proven that he acted with due diligence in raising this newly-discovered fact. Accordingly, he has not satisfied a PCRA timeliness exception, and we are without jurisdiction to review the merits of his underlying claim.

In Appellant's second issue, he challenges his lifetime-registration requirement under SORNA, arguing that it is illegal under the rationale of *In re J.B.*, 107 A.3d 1 (Pa. 2014), and *Commonwealth v. Haines*, 222 A.3d 756 (Pa. Super. 2019). This Court has summarized those two decisions as follows:

> In *J.B.*, juvenile sexual offenders raised several constitutional challenges to SORNA's application, including a claim that it violated their due process rights by utilizing an irrebuttable presumption that all juvenile offenders "pose a high risk of committing additional sexual offenses." *J.B.*, 107 A.3d at 15-16. The Court stated that the challenging party must demonstrate: (1) an interest protected by the due process clause; (2) utilization of a presumption that is not universally true; and (3) the existence of a reasonable alternative means to ascertain the presumed fact. *Id.* Applying this outline to the facts in *J.B.*, the Court concluded that the petitioners had "asserted a constitutionally protected interest in their reputation that ha[d] been encroached by the use of [the] irrebuttable presumption," and that application of SORNA's lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by "utilizing an irrebuttable presumption" of a high likelihood of recidivism, even though that presumption is not "universally true." *Id.* at 17. *See also id*. at 17-19 ([the] Court['s] concluding [that]

- 10 -

scientific consensus relating to adolescent development, as recognized through [the] United States Supreme Court's jurisprudence, refuted [the] legislative presumption that all juvenile offenders were at high risk of recidivation).  Finally, the Court determined that there was a reasonable alternative for assessing risk of reoffense, stating, "in fact, [it] is already in use in Pennsylvania[; …] SORNA provides for individualized assessment for all sexual offenders convicted of a Tier I, II, or III offense by the [Sexual Offenders Assessment Board (SOAB)] for designation of sexually violent predators."  *Id.* at 19.  The Court concluded: "Given that juvenile offenders have a protected right to reputation encroached by SORNA's presumption of recidivism, where the presumption is not universally true, and where there is a reasonable alternative means for ascertaining the likelihood of recidivating, we hold that the application of SORNA's current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by utilizing an irrebuttable presumption."  *Id.*

Thereafter, in *Haines*, this Court determined that the *J.B.* Court's holding should apply with equal weight to juvenile adjudications as well as to … defendant[s] convicted as an adult for crimes committed as juveniles.  … In that case, between the years 2005 and 2006, when Haines was between the ages of fourteen and fifteen, she sexually assaulted a person under the age of thirteen.  The victim did not disclose the offenses, which were classified as delinquent acts under [42 Pa.C.S. §]  6302, until 2016, when Haines was over the age of twenty-one.  Haines claimed that requiring her to register as a sex offender for offenses she had committed as a juvenile constituted cruel and unusual punishment and violated the Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution.  This Court, relying on *J.B.*, stated:

> Clearly, under *J.B.*, had [Haines] been adjudicated delinquent at that time, no registration requirement would apply to her.  [Haines'] subsequent conviction of the sexual offenses when she was an adult does not diminish the fact that she was a juvenile at the time of their commission, and because of that, she should not be held to an irrebuttable presumption of reoffending at age 26.  *J.B.* requires us to analyze [Haines'] behavior at the time the offenses were committed.  For these reasons, we find that the *J.B.* [C]ourt's holding should apply with equal weight to juvenile

adjudications as well as to defendants convicted as adults for crimes committed as juveniles.

*Haines*, 222 A.3d at 759…. The *Haines* Court also noted that our Supreme Court in *J.B.* referenced the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 … (2012), to corroborate an "inherent understanding of the fundamental differences between adults and children[.]" *Haines*, 222 A.3d at 758 (citing *Miller*, 567 U.S. at 471…).

*Commonwealth v. Asbury*, 299 A.3d 996, 998-1000 (Pa. Super. 2023) (emphasis omitted).

In the case *sub judice*, Appellant argues that the *Haines* panel applied the rationale of *J.B.* to individuals like Appellant, who were juveniles when they committed their sexual offenses but were tried as adults. He contends that *Haines* satisfies the new-retroactive-right exception of section 9545(b)(1)(iii) and, because he filed his petition within one year of that decision, he has met that timeliness exception.

In rejecting this claim, the PCRA court stressed that Appellant

fails to acknowledge that [section] 9545(b)(1)(iii) requires the constitutional right asserted was a right recognized by the U.S. Supreme Court or Pennsylvania Supreme Court and was also held to apply retroactively. Here[,] the case relied upon by [Appellant] [is] a Pennsylvania Superior Court case, [and that Court] did [not] hold [the case]to apply retroactively. As such, [Appellant] fails to satisfy the requirements of [section] 9545(b)(1)(iii).

Rule 907 Notice, 1/22/24, at 2 (unnumbered). Additionally, the PCRA court noted that Appellant, "unlike [the petitioner] in *Haines*, was tried as an adult because his crimes were not considered delinquent acts." *Id.* (citing 42 Pa.C.S. § 6302 (defining the term 'delinquent acts' as discussed *infra*); *Asbury*, 299 A.3d at 1000).

Initially, we disagree with the PCRA court's conclusion that Appellant's challenge to the application of his SORNA registration requirement must satisfy a PCRA timeliness exception. In **Commonwealth v. Lacombe**, 234 A.3d 602 (Pa. 2020), our Supreme Court expressly "decline[d] to find [that] the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes…." **Id.** at 618. The Court "conclude[d] the trial court had jurisdiction to consider Lacombe's 'Petition to Terminate His Sexual Offender Registration Requirements.'" **Id.**

Here, Appellant first raised his SORNA challenge in a *pro se* "Motion to Vacate SORNA Requirement," specifically arguing that relief was warranted under the decisions of **J.B.** and **Haines**. **See** Motion, 3/5/21, at 4-6 (unnumbered). Although Appellant's counsel subsequently presented his SORNA challenge in an amended PCRA petition, we conclude that, pursuant to **Lacombe**, the PCRA's time limitations did not apply to Appellant's SORNA claim and the court had jurisdiction to consider it.

Nevertheless, we agree with the PCRA court that Appellant's case is distinguishable from **Haines** for the same reasons set forth by this Court in **Asbury**. There, Asbury was 16 when he committed rape by forcible compulsion while using a firearm, which did not qualify as a 'delinquent act' under section 6302. **Asbury**, 299 A.3d at 997. Asbury was ultimately deemed to be a sexually violent predator subject to lifetime registration under SORNA

- 13 -

II.[5]  *Id.* at 998.  Asbury appealed, arguing that his SORNA lifetime registration requirement was illegal under *J.B.* and *Haines*, as he was convicted as an adult of acts committed when he was a juvenile.  *Id.*

We disagreed, finding that *Haines* was distinguishable.  We reasoned that, "[e]ven though, like Haines, Asbury was a juvenile at the time of the commission of the June 2018 offense, unlike in *Haines*, Asbury committed a criminal act, not a delinquent act…."  *Id.* at 1000 (citations omitted).  The panel concluded "the holding in *Haines* is premised on a juvenile offender who committed delinquent acts at the time of offending, not criminal acts, as Asbury committed here."  *Id.* (citations omitted).  The *Asbury* panel explained that,

> [t]he *Haines* Court stated that the holding in *J.B.* should apply with equal weight to defendants convicted as adults for crimes committed as juveniles.  *J.B.*'s holding, however, stems from the premise that, as a matter of due process, a juvenile should not be held to an **irrebuttable presumption of reoffending**.  *See Haines*, 222 A.3d at 759; *see also In re J.B.*, 107 A.3d at 14. The *J.B.* Court stated SORNA's registration requirements violated due process because they "improperly brand" juvenile offenders' reputations "with an indelible mark of a dangerous recidivist, even though the irrebuttable presumption linking adjudication of specified offenses with a high likelihood of recidivating is not 'universally true.'"  *Id.* at 19.

_____

[5] SORNA was amended by Act of Feb. 21, 2018, P.L. 27, No. 10, §§ 1-20, effective Feb. 21, 2018 (Act 10 of 2018), and again, reenacted and amended on June 12, 2018, P.L. 140, No. 29, §§ 1-23, effective June 12, 2018 (Act 29 of 2018).  Act 10 and Act 29 are collectively referred to as SORNA II.

The Commonwealth argues that Asbury's own actions eliminated that due process argument, as he reoffended within weeks of the June 2018 rape. We are inclined to agree.

In *J.B.*, the Court recognized the exception presented here, stating:

> We note that the category of "individual[s] convicted of a sexually violent offense" in 42 Pa.C.S. § 9799.24(a) generally refers to adults but will also include certain juveniles prosecuted in criminal court. Specified juveniles are automatically subject to criminal prosecution, rather than delinquency adjudication, if they were at least fifteen years old when they allegedly committed the relevant crimes of rape, involuntary deviate sexual intercourse, or aggravated indecent assault (or the related inchoate crimes) and the crime was committed with a deadly weapon or if they have previously been adjudicated delinquent of such offense, subject to transfer to juvenile court if in the public interest. *Id.* [at] §§ 6322(a) ("Transfer from criminal proceedings"); 6302(2) (listing crimes not included in "delinquent acts"). Additionally, a juvenile who is at least fourteen years old at the time of the relevant conduct is subject to transfer from juvenile court if "there are reasonable grounds to believe that the public interest is served by the transfer of the case for criminal prosecution." *Id.* [at] § 6355(a)(4)(iii). These provisions will exempt from the term "juvenile offender" some of the more dangerous youths, who will instead be subject to SORNA as individuals convicted of sexual violent offenses. *Id.* [at] § 9799.13.

*J.B.*, *supra* at 8 n.14…. *See also* [*Commonwealth v.*] *Armolt*, [204 A.3d 364,] 373 [(Pa. 2023)] ("In light of the stated purposes of the Juvenile Act to protect the community and hold the offender accountable, it would be unreasonable to conclude the General Assembly intended for the Act to subvert an offender's accountability in the name of rehabilitation. Rather, it is clear to us that the legislature intended to equally balance the desire for rehabilitation with the need for community protection and offender accountability, and did not intend for the Act to be weaponized to preclude accountability[.]"). Thus, although the Supreme Court's holding in *J.B.* and this Court's holding in *Haines* applies to juvenile offenders subject to lifetime registration, we are unable to find any cases extending those holdings to the

> particular facts here, where Asbury committed a criminal act, not
> a delinquent act, and the statutory provisions exempted him from
> the term "juvenile offender," and instead subjected him to SORNA
> as [an] individual[ ] convicted of sexual violent offenses." *See*
> *J.B.*, *supra* at 8 n.14; *see also In re Huff*, … 582 A.2d 1093,
> 1098 ([Pa. Super.] 1990) ("Our legislature has created a separate
> legal system for the adjudication of juvenile offenders.").

*Id.* at 1000-01 (some citations omitted).

In the instant case, as in *Asbury*, Appellant's crime of AIA, for which his SORNA lifetime registration requirement is imposed, does not meet the statutory definition of "delinquent act." Namely, under section 6302, the term "delinquent act" does not include "[a] crime committed by a child who has been found guilty in a criminal proceeding for [any crime] other than a summary offense." 42 Pa.C.S. § 6302. As stated *supra*, Appellant pled guilty on September 9, 2010, to several felony offenses in the robbery case. *See* Commonwealth's Brief at 3 n.9. Thus, when Appellant pled guilty to AIA on June 23, 2011, that crime did not constitute a 'delinquent act' under section 6302.[6]

Moreover, in *Asbury*, this Court denied relief because, after *J.B.*, our Supreme Court had held that the SORNA requirements applicable to sexually violent predators such as Asbury are not punitive. *See Absury*, 299 A.3d at 1001 (citing *Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020)). Similarly,

---

[6] We also observe that Appellant's AIA offense would not have qualified as a "delinquent act" at the time he committed it. Appellant's offenses in the robbery case were committed in August of 2009, and his instant AIA crime was committed between August 1, 2007 and April 16, 2010. *See* Commonwealth's Brief at 2. Thus, Appellant's AIA crime was committed during the same timeframe as the offenses in his robbery case.

Appellant's SORNA registration requirement, which falls under Subchapter I of the statute, was held to be non-punitive by our Supreme Court in **Lacombe**. *See Lacombe*, 234 A.3d at 626. Accordingly, Appellant cannot contend that his SORNA registration requirement constitutes cruel and unusual punishment. *See Asbury*, 299 A.3d at 1001 (citation omitted). No relief is due on Appellant's challenge to his lifetime-registration requirement under SORNA.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  3/28/2025